**Larry Darnill YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51991.**

Court of Criminal Appeals of Texas.

Dec. 22, 1976.

Thomas D. Wells, Paris, for appellant.

James D. Vollers, State Atty., David S. McAngus, Asst. State Atty., Austin, for appellee.

## OPINION

ONION, Presiding Judge.

This appeal arises from a conviction for murder without malice under the provisions of Article 802c, Vernon's Ann.P.C., of the former Penal Code. The alleged offense was shown to have occurred on January 15, 1972. The trial commenced on June 20, 1972. For some reason the judgment was not entered of record until January 27, 1975. Sentence was not entered until February 10, 1975 and the appellate record did not reach this court until February 27, 1976.

We shall at the outset consider appellant's contention that the evidence is insufficient to sustain the conviction in that the State failed to prove that he was the driver of the car at the time of the alleged offense, a necessary element of such offense.

In the instant case the record reflects that on the afternoon of January 15, 1972 about 4 p. m. Department of Public Safety Patrolman Earl Green and his partner, Thomas Pervis, stopped a red Chevrolet automobile which bore no license plates and arrested the driver Dillworth. The appellant Young and one Donald Edwards were passengers in the car. Pervis left the keys with Young at Dillworth's request that the car be released to the appellant and Edwards when Dillworth was taken into custo-

dy. About 5 p. m. these officers received a report of an automobile wreck, and when they arrived at the scene, they observed the same red Chevrolet turned upside down and the appellant Young and Edwards were sitting on the ground on the side of the road where the red car was located. There were quite a few people there when the officers arrived.

Billy Ray Hines testified the collision in question occurred right outside his home, and that when he heard the impact of the two cars he looked outside and saw a red car "flying through the air" and that it came to rest upside down. Hines revealed he first went to the other vehicle in which the deceased was riding and observed that the deceased appeared dead, her husband unconscious and two of the three children in the car unconscious. He related that he removed one little boy pinned under some wreckage and "laid him out." He then explained that when he saw he couldn't further help the occupants of that car he proceeded to the red car. The time lapse from the time of collision until he got to the red car was not shown. He observed two people in the upside down car. He testified that one was in the front and another in the back, ". . . the car, like I said, was laying upside down." When he stated the appellant was in the front part of the car, the record then reflects:

"Q He was the one in the front of the car?

"A If the car had been turned over, if you follow me. The car was upside down.

"\* \* \*

"Q And he was—although the car was turned upside down, he was in the vicinity there of the wheel?

"A Yes, sir."

Hines was the only witness who placed the appellant inside the car.

Thomas Burgess, the husband of the deceased, testified that he was rendered unconscious by the collision. He did not testify nor was he asked about the identity of the occupants of the other car.

The record clearly shows that the appellant and his companion where lying on the ceiling of the upside down car some time after the car had catapulted through the air. The seats and steering wheel were above them. Officer Green indicated that evidence found at the scene indicated the red Chevrolet "launched or went into the air" and came down on the hood of the other car, flipped off and rolled over and came to rest on its top.

No witness testified he saw the appellant drive the vehicle. The strongest evidence is that he was given the keys and an hour later following the described wreck he was lying in the front of the ceiling of the car after it had flown through the air and collided with another car and turned over. He was not the only one in the car.

■ To sustain a conviction under Article 802c, supra, the evidence must establish that the accused drove the vehicle as alleged in the indictment. See Article 802c, supra. Cf. *Johnson v. State*, 517 S.W.2d 536 (Tex.Cr.App.1975); *Gamboa v. State*, 481 S.W.2d 423 (Tex.Cr.App.1972); *Weldon v. State*, 397 S.W.2d 859 (Tex.Cr.App.1966); *Sharp v. State*, 164 Tex.Cr.R. 80, 296 S.W.2d 932 (1957).

■ The State relies upon circumstantial evidence to sustain the conviction. It is well established that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient. *Indo v. State*, 502 S.W.2d 166 (Tex.Cr.App.1973); *Flores v. State*, 489 S.W.2d 901 (Tex.Cr.App.1973).

In determining whether the incriminating circumstances are sufficient to support a conviction each case must necessarily be tested by its own facts. *Moore v. State*, 532 S.W.2d 333 (Tex.Cr.App.1976); *Indo v. State*, supra; *Baker v. State*, 447 S.W.2d 172 (Tex.Cr.App.1969).

■ Only the witness Hines placed the appellant in the car. Only after Hines had extracted one person from the other car who was pinned in the wreckage did he walk over to the car and observe the appellant and another man lying on the ceiling of the overturned car. He answered affirmatively the question of the prosecutor which suggested the appellant was in the "vicinity of the wheel." Anyone in the car would have been in the vicinity of the wheel, and the evidence reflects not only that the car catapulted through the air and turned over, but that some time elapsed before Hines reached the car.

The instant case is distinguishable from those cases where the defendant is the only person in the car and was found therein shortly after the offense. See, e. g., *Sandoval v. State*, 422 S.W.2d 458 (Tex.Cr.App. 1967); *Perez v. State*, 432 S.W.2d 954 (Tex. Cr.App.1968).

In 24 Tex.Jur.2d, Evidence, Sec. 742, p. 422, it is written:

"In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged. . . ." *Culmore v. State*, 447 S.W.2d 915 (Tex.Cr.App. 1969); *Ysasaga v. State*, 444 S.W.2d 305 (Tex.Cr.App.1969).

Although the evidence does not leave the appellant free from the suspicion of guilt, it fails to show his guilt to a moral certainty so as to exclude all reasonable doubt that

the appellant was the driver of the car. See *Culmore v. State*, supra.

The judgment is reversed and the cause remanded.

ODOM, J., dissents.