**James William HOBBS, Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. A14–82–107CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 24, 1982.

Rehearing Denied Dec. 16, 1982.

Discretionary Review Refused
March 16, 1983.

Roy Beene, Houston, for appellant.

Timothy Taft, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MILLER and JUNELL, JJ.

MILLER, Justice.

This is an appeal from a conviction for promotion of obscene material in violation of Tex.Penal Code Ann. § 43.21 and § 43.-23(c) (Vernon Supp.1982–1983). The appellant was arrested and charged by information with selling an obscene magazine to G.P. Hugo, a Houston police officer, assigned to the Houston Police Department Vice Division. On the appellant's plea of not guilty, the case was tried to a jury and a verdict of guilty was returned. The court assessed his punishment at thirty days confinement in jail. Notice of appeal was timely filed. Appellant bases his appeal on nine grounds of error; we sustain appellant's eighth ground of error and reverse.

The record reflects that on September 8, 1981 Officer Hugo purchased an allegedly obscene magazine from the appellant at his place of business, known as Sun Adult Theatre located at 7220 Airline, Houston, Harris County, Texas, for the sum of $26.50. Officer Hugo appeared before a Harris County, Texas, Magistrate, Judge Neil McKay, and said under oath that "after having personally viewed the magazine in its entirety, it was determined that this magazine meets the standard of obscenity as defined in Sec. 43.21 et seq. of the Texas Penal Code."

In his eighth ground of error, appellant contends that the trial court committed reversal error by refusing to grant a mistrial after the State's witness made unresponsive and prejudicial responses to questions by defense counsel during cross-examination which effectively denied appellant a fair trial. The State maintains that since the trial court gave an instruction to disregard in order to cure the error of an unresponsive answer that the error, if any, was cured. The State further asserts that this ground of error is utterly without merit. With this we do not agree, and find to the contrary. In fact, during the State's oral argument before this Court, the prosecutor admitted that the unresponsive answers were harmful to the appellant, even though it is the State's position that such harm did not warrant a mistrial.

After carefully reviewing the entire record, we cannot conclude that the unresponsive answers were harmless. We express concern about a number of outbursts by the State's key witness, Officer Hugo, who, during the course of the trial, made numerous unresponsive answers which were highly prejudicial to the appellant and were obviously calculated to deny appellant a fair trial. We are particularly concerned with the following scenario which developed during the cross-examination of Officer Hugo by appellant's defense attorney Roy Beene.

QUESTIONS BY MR. BEENE:

Q. Diner's News, 240 Westheimer; adult book store, sells sexually explicit adult oriented literature?

A. I've made numerous cases in there also, yes.

Q. Kirby Street Newsstand, twenty-four hour adult newsstand, 3115 Kirby Drive. This store sells sexually explicit adult oriented literature; is that true?

A. Yes, we arrested many people in there for homosexual acts—

MR. BEENE: Your Honor, we would ask that Mr. Hugo—

THE COURT: Yes, just answer the question, please sir. Don't volunteer something that is not called for.

MR. BEENE: We would ask that the jury be instructed to disregard this last comment of Mr. Hugo.

THE COURT: Yes, the jury will disregard the last remark. Now proceed, Counsel.

MR. BEENE: Your Honor, we would ask for a mistrial based upon the witness' misconduct.

THE COURT: That will be denied, Counsel. Proceed.

. . . . .

Q. Are there Seven-Eleven type stores in Houston that sell various sexually oriented magazines?

A. Are you talking in regards to "Playboy" and "Hustler"?

Q. "Playboy," "Hustler," "Club," any of that type news, list of magazines.

A. Magazines that aren't illegal, that's correct.

MR. BEENE: Objection, Your Honor. Again Mr.—

THE COURT: —overruled, Counsel.

MR. BEENE: Please note our exception.

THE COURT: You asked for a lot of this. Go ahead.

QUESTIONS BY MR. BEENE CONTINUED:

Q. That's your determination; is it not, personal determination?

A. State's determination.

Q. That's your personal determination?

A. No.

MR. WILKINSON: Your Honor, I object. Counsel is arguing with the witness.

THE COURT: Yes, don't argue with the witness. Ask questions.

MR. BEENE: I'm attempting to, Your Honor.

THE COURT: Sir?

MR. BEENE: I'm attempting to.

THE COURT: Attempting to what, Counsel?

MR. BEENE: To ask questions of the witness.

THE COURT: Well, let's do it.

MR. BEENE: And he's being quite unresponsive.

THE COURT: You're educated. You know how to ask a question. Don't argue with the witness.

MR. BEENE: Mr. Hugo also is educated, Your Honor—

THE COURT: —Just a minute. Ladies and gentlemen, retire to the jury room for just a minute.

(The jury leaves the courtroom in the custody of the Bailiff.)

THE COURT: Now, Counsel, I will not tolerate another remark like that. I don't intend to. Do you understand that?

MR. BEENE: I understand, Your Honor.

THE COURT: Now you got a law license; behave yourself like a lawyer.

MR. BEENE: I'm attempting to. I'm attempting to get a straight answer out of Mr. Hugo.

THE COURT: I will not have you badgering the witness or arguing with the witness, or arguing with the Court. Now you can take your exceptions and go to the Supreme Court with them.

MR. BEENE: May I put it in the record, Your Honor, that I have on numerous occasions asked the Court to instruct the witness to be responsive and not throw in unresponsive prejudicial matters such as, "Diners News, he has arrested people in homosexual conduct at that location"?

THE COURT: Oh, yes, it's in the record. It's in the record, Counsel. I'm warning you to behave yourself, Counsel, and I'm not going to do it again. Do you understand that?

MR. BEENE: Yes, Your Honor, I understand.

■ The unresponsive statements by Officer Hugo were clearly prejudicial in that the statement concerning homosexual activities in the one location were clearly thrown in by the witness in an attempt to paint with a broad brush in order to connect all adult bookstores with the alleged homosexual conduct and the implication that homosexual conduct is created by adult bookstores. Additionally, it is error to admit evidence of another offense when defendant is not shown to be the party guilty of the offense. *Tippins v. State,* 530 S.W.2d 110 (Tex.Cr.App.1975).

■ Generally, error in admitting improper evidence may be corrected by withdrawal and a prompt instruction to the jury to disregard the evidence. An exception to the general rule arises in extreme cases where it appears that the improperly admitted evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *McAfee v. State,* 624 S.W.2d 776 (Tex.App. Houston [14th Dist.] 1981). *See Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976); and *Harris v. State,* 375 S.W.2d 310 (Tex.Cr.App.1964). It is our

opinion that the facts here do not fit the general rule, but the exception.

■ The Texas Court of Criminal Appeals, in *Music v. State,* 135 Tex.Cr.R. 522, 121 S.W.2d 606 (Tex.Cr.App.1938) (Opinion on Rehearing) stated that:

> *It* [the witness' voluntary statement] *placed appellant in such an unfavorable light before the jury that we fail to see how its bad effect could be removed by the instruction of the Court.* The rule supported by many authorities seems to be that if the illegal testimony is not of a very material character and is not likely to prejudice the jury against the defendant the error may be be cured by withdrawing it from the jury, but *if the illegal testimony was calculated to influence or affect the jury adversely to the defendant the withdrawal of it will not cure the error.* (Emphasis added).

The accused is entitled to a fair trial without reference to outside influence. *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972). The Court's instruction was not sufficient to remove the harmful effect of the testimony deliberately volunteered by Officer Hugo.

■ In *Edmiston v. State,* 520 S.W.2d 386 (Tex.Cr.App.1975) (Opinion on Rehearing), an appeal from a conviction for the distribution of an obscene magazine, the police officer testified that he had seen patrons of another "X" rated movie theatre masturbating in the theatre. In *Edmiston,* the trial court responded promptly to an objection and instructed the jury not to consider that testimony. The Texas Court of Criminal Appeals did not decide whether this constituted reversible error since it found that the harmful effect of other testimony deliberately elicited by the prosecutor was sufficient to require reversal. *Edmiston* was reversed simply because the question and answer elicited evidence that the lawyer retained by the appellant had a financial interest in the theatre where the obscene magazine was sold. The evidence in the instant case appears to be more harmful to the appellant than that in *Bray* or *Edmiston,* and other cases applying the general rule.

The incident in the trial court was unfortunate, and Officer Hugo's answers were unresponsive hearsay implicating the appellant in a crime for which he was not charged. The witness' voluntary statement regarding homosexual activities had the effect of telling the jury either that the appellant was promoting homosexual activity or that homosexual activity is created by adult bookstores.

The exception to the general rule (that any error in admitting improper testimony may be cured by the trial court's withdrawal of the evidence and its instuction to the jury to disregard) was recently stated again by the Texas Court of Criminal Appeals in *Crawford v. State,* 603 S.W.2d 874 (Tex.Cr. App.1980), wherein the Court said:

> [I]n extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds, the error of admission is not cured by the instruction. *Id.* at 876.

In another case involving an unresponsive statement by a police officer, the Texas Court of Criminal Appeals, sitting En Banc, in *White v. State,* 610 S.W.2d 504 (Tex.Cr. App.1981), has recently noted that:

> We readily admit, as has been held in several cases cited by appellant, that 'an accused may not be tried for some collateral crime or for being a criminal generally.' *See, e.g. Hines v. State,* 571 S.W.2d 322, 325 (Tex.Cr.App.1978).

The exceptions to the rule against extraneous offenses were noted in *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980), wherein the Court quoted from *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), which set forth the exceptions and said:

> Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a contested issue in the case. . . . Thus, *before evidence of collateral crimes is admissible, a relation-*

ship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown . . . .

Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the "res gestae"—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the State's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused. (Emphasis added).

Upon our careful review of the record, we do not see that any of these exceptions are applicable, and can only conclude that the officer's mention of any alleged extraneous offenses were merely calculated to inflame the minds of the jury in order to deny the appellant a fair trial. Therefore, we hold that the trial court erred in overruling appellant's motion for a mistrial. To hold otherwise would only encourage this kind of improper conduct in the future. Such inflammatory and prejudicial unresponsive statements by a police officer, who should know better, should not and will not be tolerated and condoned by the Courts of Texas. In the event of retrial, we suggest that greater effort be employed by the Court in seeing that witnesses, especially police officers, restrain themselves in this respect. Unresponsive comments by witnesses have no place in the courtroom and tend to militate against an atmosphere which is favorable to a fair trial for an accused. *Cavender v. State,* 547 S.W.2d 601 (Tex.Cr.App.1977).

Since appellant's eighth ground of error is dispositive of this case, we will not take the liberty to address appellant's other grounds of error.

The judgment of the trial court is reversed and this cause is remanded to the trial court for proceedings not inconsistent with our holding.