**Richard John ALTO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–85–639–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 1, 1987.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Jr., Roe Morris, Joan Campbell, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

The jury rejected appellant's plea of not guilty to the charge of burglary of a habitation, found he had twice previously been convicted of burglary of a habitation and thus assessed punishment at confinement for life. Issues on appeal concern the suf-

ficiency of the evidence, effective assistance of counsel, admissibility of evidence and jury argument. We affirm.

In his first point of error appellant contends the evidence is insufficient to show that appellant entered the complainant's home. It is well-settled that when the sufficiency of the evidence is challenged, our function is to view the evidence in the light most favorable to the verdict and then determine whether, on those facts, any rational person could find guilt beyond a reasonable doubt. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). When so viewed, the following facts were established.

At approximately 1:30 p.m. on March 14, 1985, a deputy constable on routine patrol in an apparently quiet southwest Houston neighborhood noticed a suspicious looking black automobile driven by a female (Jacqueline Mortimer) with a male occupant (appellant) as a passenger. Because of the manner in which the male looked at the officer, he noted the license number and description of the car. The automobile was registered to appellant. The officer identified appellant as the male passenger. Approximately five minutes later and only a few blocks away, the officer had a conversation with the witness Mr. Williams, a retiree, who was standing in the street, in front of his residence. Williams told him of the suspicious circumstances he had just observed involving a similar black automobile. He stated that the automobile, occupied only by a female as the driver, had been sitting at a stop sign some thirty feet away. The motor was running, and after he observed the woman looking down the street for some two or three minutes, she turned her head, saw him and then drove away. The deputy then drove around the neighborhood and located the automobile occupied by the female parked again. He stopped and asked the woman what she was doing, and she said she was copying down an address. When he asked her for identification, she drove off, and after some difficulty he had in turning his auto around, he lost sight of her automobile. Believing appellant was "on the ground"

he returned to the area where he had spoken to Williams.

During the meantime Mr. Williams' brother-in-law, Mr. Thomas, also a retiree who lived next door, came out into the street and both of them continued watching. As they were looking up the street, they observed appellant run from the front porch of the Crowell home, just down the street. Appellant ran "full blast" for about a block and then slowed to a walk. They decided to follow appellant, and Mr. Thomas got his automobile. Just as they were leaving they observed Mrs. Crowell run down her driveway, and in response to their inquiry, she stated they "had been robbed."

The Crowells were also retirees. She had been to a garden club meeting that morning and was late getting back home at approximately 12:30 p.m. They went out to eat lunch, leaving their home at approximately 12:45. When they returned at approximately 1:30, as was their custom Mr. Crowell pulled the automobile to the rear of their home, and he waited while she entered the home from the rear. As Mrs. Crowell started to enter, she saw a light on in the master bedroom and a broken rear door. She quickly retreated and ran down her driveway, telling Mr. Thomas and Mr. Williams of the burglary.

Mr. Thomas and Mr. Williams caught up with and followed appellant to the Richmond Chase apartment project, where appellant and Jacqueline Mortimer had rented an apartment some three weeks earlier. As the deputy constable pulled up into the apartment complex driveway, appellant came running out from between the buildings, but when he got within a few feet of the constable's car, he turned and ran back into the complex. He was arrested several days later.

The Crowells' master bedroom had been ransacked. Several pieces of jewelry were missing from the home. While fingerprints were lifted from some ceramic jewelry dishes, they were not sufficient for purposes of identification.

In arguing against the sufficiency of the evidence, appellant emphasizes that neither

appellant nor Mortimer was found in possession of burglary tools or stolen property, and that there simply is no evidence that appellant ever entered the Crowell home. Appellant cites numerous burglary cases where the evidence had been determined to be insufficient to sustain the conviction and argues the evidence here is likewise insufficient because the "most this record shows is that appellant was outside the home when the Crowells returned and that he left under suspicious circumstances." We do not agree. In determining whether incriminating circumstances are sufficient to support a conviction, each case must necessarily be tested by its own facts. *Young v. State*, 544 S.W.2d 421, 423 (Tex. Crim.App.1976).

While not any one of the incriminating circumstances is sufficient, in and of itself, to sustain the conviction, when taken together we hold they overwhelmingly show appellant's guilt. There was a limited amount of time that the Crowell home could have been entered—some forty-five minutes. This time is considerably narrowed, however, because appellant and Mortimer were observed in appellant's automobile only some ten or fifteen minutes before appellant was seen running from the Crowell residence. This time is further shortened by the fact that Mortimer was seen, alone, parked in appellant's automobile with the motor running only a short distance from the Crowell residence some ten or less minutes before appellant was seen running from the front porch of the Crowell residence.

The next set of circumstances concern the appellant's presence at and departure from the Crowell home. The Crowells arrived back at their home by automobile, driving in the driveway by the side of their home. It is not a reasonable hypothesis that appellant was *at that time* standing on their front porch. It is a reasonable hypothesis that as Mrs. Crowell opened the gate to their back yard, the appellant, who was then in the Crowell home, made a hasty exit through the front of the house. In addition to appellant's presence at the scene, there was damning evidence of flight, both from the Crowell home and from the deputy constable in the apartment project, which is a circumstance tending to show a guilty conscience.

Finally, the circumstances surrounding the actions of appellant's companion, Mortimer, are very incriminating. She sat in the automobile, with the motor running at the stop sign for some two or three minutes, looking toward the nearby house which was burglarized and when she saw the witness Williams looking at her, she left. When the deputy constable stopped by the side of her automobile moments later and requested identification, she drove off. Based upon all of these circumstances we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's first point of error is overruled.

■ In his second point of error appellant contends he was denied effective assistance of counsel when the state proved that defense counsel unethically misrepresented himself to prosecution witnesses prior to trial.

Several weeks prior to trial defense counsel went to the home of the witness Thomas. When Mr. Thomas answered the door, appellant's counsel introduced himself as "an officer of the court" and stated that he desired to talk about the Alto case. When he was asked whether he was assisting in the prosecution of the case, "he didn't say yes or no. He just nodded his head and said, 'I'm doing leg work on the case.'" The witness Williams then came to the Thomas home and when he (Williams) asked if counsel was assisting in the prosecution, counsel answered, "Oh, no, no, no, no, no." Both witnesses talked to counsel for "about an hour." On the following day counsel sent a special delivery letter to Mr. Thomas in which he outlined his version of their conversation and requested Mr. Thomas to notify him if there were any errors. Mr. Thomas called the assistant district attorney to report what had occurred, stated he would not answer the letter and requested the assistant district attorney to notify defense counsel of some

errors in the letter. Defense counsel's visit to the witness' home was first brought out by defense counsel on cross-examination.

On redirect examination and without objection, the prosecutor developed the circumstances, as set out above, of counsel's visit to Mr. Thomas' home and the interview. On further cross-examination, counsel developed that he neither represented that he was with the district attorney's office nor that he was appellant's attorney. Otherwise, he basically conceded he had done just as the witness had testified, but defended his conduct on the basis that had he been candid, he feared Mr. Thomas would not speak to him.

Able appellate counsel cites numerous cases where it has been held improper for the state to demonstrate to the jury either through evidence or argument that defense counsel engaged in criminal or unethical conduct during his representation of the accused. He argues that the state proved trial counsel gained entry into the home of a prosecution witness "under false pretenses by misrepresenting his role" and that this "evidence of counsel's ethical misconduct ... struck at appellant over the shoulders of counsel [and] denied him the effective assistance of counsel and a fair trial."

In order for a defendant to succeed on a claim of ineffective assistance of counsel, "it must be shown that counsel's performance was deficient [and] the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Crim.App.1985). While we do not put our stamp of approval on trial counsel's conduct, we cannot conclude that it was "unquestionably" unethical as does appellant's present counsel. Even appellant's counsel concedes that trial counsel "did not directly lie and represent himself as an assistant district attorney...." We do not find that the actions of trial counsel in leaving with the witnesses the "impression that he was assisting the prosecution", as phrased by appellant's present counsel, rises to the level of striking at appellant over the shoulders of counsel and thus denying him effective assistance of counsel and a fair trial. *Cf. Brewer v. State,* 649 S.W.2d 628 (Tex.Crim.App.1983). Appellant's second point of error is overruled.

In his third point of error appellant contends the trial court erred in permitting the complainant to testify that her home had been burglarized prior to the offense on trial. In preliminary questions to the complainant, the prosecutor developed that the Crowells had been living in their home for almost twenty years, that about a month after moving into their home there was a burglary of "a house down the street," that as a result they covered the glass portion of their rear door with expanded metal and installed burglar bars and dead bolt locks. After she answered that they installed the "longer dead bolt locks" to discourage burglars, the following occurred:

Q. Had you ever been burglarize [sic] in that house, yourself, before March 14th?

[Defense Counsel]: Your Honor, we'd object to this. I think we're going far afield from the case. It's not relevant.

The Court: Is there relevance?

[Prosecutor]: In how they approached the house that day and the reason they approached it, saying what they did that day.

[Defense Counsel]: They, who? Who approached the house has nothing to do with the charges before the Court.

[Prosecutor]: We're talking about when this man broke into her house. And certainly, when they arrived at their house is—

The Court: Overruled.

. . . . .

Q. [By Prosecutor]: Had you ever been burglarized before?

A. Yes, we had, several years before.

Q. After that experience, do you and your husband, when you approach your house, do it in a manner different than how you used to?

A. Well, we're much more cautious than we used to be when we would usually come up our driveway and go in

through the back door. And we have a fence with a back gate to it that separates the driveway from our entryway into the patio. And as I would get out of the car each time, my husband would say, "Be sure and look around carefully," which I always did.

Q. And was this a routine, habit?

A. Very routine.

Relying upon the general rule that the accused is entitled to be tried on the accusation made in the state's pleading and not for some collateral crime or for being a criminal generally, appellant argues the improper admission of this extraneous offense was harmful to appellant and calls for a reversal. We do not agree. It seems obvious that the purpose for which the prosecutor offered the evidence was to explain to the jury the reason for the extreme caution the Crowells exercised in approaching their home in a quiet residential neighborhood. Even had the objection been more specific, we hold that the trial court properly admitted the evidence. This is not an *extraneous offense* situation. No attempt was made to connect the defendant with the past crime. "If the evidence fails to show ... that the accused was connected to the offense, then evidence of an extraneous offense is not established." *McKay v. State,* 707 S.W.2d 23, 32 (Tex. Crim.App.1985). Appellant's third point of error is overruled.

■ In his fourth point of error appellant contends the trial court erred in refusing to declare a mistrial following argument by the prosecutor in the guilt-innocence phase of the trial. The complained-of remarks were:

I suggest to you that this case is a case for punishment, ladies and gentlemen. And that's why you're here. I ask you to go back and find the defendant guilty quickly so that we can get on to the punishment stage.

Appellant argues that it was improper at that stage of the trial for the prosecutor to ask the jury to consider punishment rather than the facts, citing *Cherry v. State,* 507 S.W.2d 549 (Tex.Crim.App.1974) where somewhat similar argument was made. In that case the prosecutor argued "I believe

[sic] that y'all know that the real reason we tried this case was not to determine guilt or innocence, but to determine what kind of punishment that is going to be set on this particular kind of crime." *Id.* at 549. However, in that case, the objection was overruled, but, here it was sustained and the jury was instructed to disregard. Further, when the complained-of statement is considered in context with her concluding remarks, we believe it was a proper plea for law enforcement. The final remarks to the jury were:

There is a lot of crime in Harris County, Texas. And there are lots of burglaries of houses. And I am suggesting to you that you are going back there with powerful evidence. That's Mr. Williams, is one, deputy is another, and Mr. Thomas is the third. Three I.D. witnesses, two of them that watched him walking off, running off the front porch that day. That's going to beat hundreds and thousands of fingerprints or pieces of sweat anywhere.

I ask you to think about that. You can go back there, and you can find that defendant not guilty. And if you do that, I'd suggest to you that you lose the right, from now on when you sit and you read your newspaper and hear about burglaries, to say, "Why doesn't somebody do something?" Because the State has brought to you three people who saw this man. And they are solid, solid people, each one of them. And you know that. You watched them. And if you want to go back there and find this man not guilty, then you can do that. And you can tell Mr. Thomas, "Five minutes, but you were mistaken." And you can tell Mr. Williams, "Five minutes, but you were mistaken. And we're sorry. That's just not enough. You've got to do more."

There is nothing more that we can bring you. Listen, he lives there. And three eyewitnesses. I suggest to you that this case is a case for punishment, ladies and gentlemen. And that's why you're here. I ask you to go back and find the defendant guilty quickly so that we can get on to the punishment stage. Thank you.

[Defense Counsel]: We'd object to that statement. The only thing before the jury is the guilt or innocence, and that is a misstatement.

THE COURT: That's correct. All right. Be sustained.

[Defense Counsel]: We'd also ask you instruct the jury that they're only to consider—

THE COURT: Jury will disregard.

[Defense Counsel]: We'd more for mistrial, because—

THE COURT: Overruled.

Argument very similar to that complained of in the instant case was also held to be at most harmless error in *Mann v. State*, 718 S.W.2d 741, 744–45 (Tex.Crim.App.1986). Appellant's fourth point of error is overruled.

■ In his fifth point of error appellant contends the trial court erred in permitting the prosecutor to question a defense witness at the punishment stage regarding the number of burglaries committed each year in Harris County in order to obtain money for drugs.

Dr. Phillip Earle was called as a witness by the defense during the punishment phase of the trial. After appellant fully proved his medical credentials, he established that Dr. Earle had known the Alto family, including appellant, for about seven years. He testified appellant had suffered from a drug dependency for the past four or five years, but that he considered appellant to be non-violent. Finally, he testified people can be successfully treated for drug dependency and that appellant had expressed a desire to rehabilitate himself.

On cross-examination the following occurred:

Q. Are you aware of how many burglaries are committed in Harris County to obtain funds for drugs each year, sir?

[Defense Counsel]: Objection. Again it has nothing to do—

THE COURT: Overruled, cross-examination.

BY [Prosecutor]:

Q. Are you aware of that, sir?

A. I don't know the actual statistics; but I imagine it's quite high, yes.

Appellant's present counsel argues that it was error to permit the jury to consider "extraneous burglaries which appellant was not shown to have committed," and states *Hobbs v. State*, 650 S.W.2d 449 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) presents an analogous situation. We do not agree. In *Hobbs*, the issue was an unresponsive answer by the witness, a police officer, which this court held was so prejudicial that an instruction to disregard was insufficient to cure the error. There is no reasonable probability that the evidence complained of might have contributed to the conviction. *See Prior v. State*, 647 S.W.2d 956, 959 (Tex.1983).

As we view the issue before us, the question was legitimate cross-examination. Appellant's trial counsel qualified the witness as an expert witness and then sought to paint a picture for the jury that, while appellant had a drug dependency problem, the problem was not that serious. The witness testified that appellant was a non-violent person, that people in appellant's position have been successfully treated, and that appellant had indicated that he would like to change and rehabilitate himself. We cannot close our eyes to the fact that it is common knowledge that drug dependency is responsible for the high incidence of burglaries. Trial counsel set the stage for the inquiry by the prosecutor, and appellant cannot now complain. Appellant's fifth point of error is overruled.

■ In his sixth point of error appellant contends the trial court erred in denying his motion for a mistrial after the prosecutor argued during summation at the punishment stage that the jurors paid a large amount for insurance because of people like appellant.

Taking the complained-of argument within the context in which it was made, the record shows the following:

Mrs. Crowell says she lives—her life is affected every day. She told you when she and her husband drive up each day together go through a ritual. "Does everything look okay?" "It looks okay to me." They keep the car out of the garage and the engine running in case they have to make a fast getaway. You

think about it. It's common knowledge that everyone in Harris County does the same kind of thing. When you drive up, you look at your windows. You bolt your doors every day when you leave. You buy burglar alarms. You pay huge insurance, and you pay taxes. The insurance is because of people like this. Four times.

[Defense Counsel]: We'd object to that, Your Honor. There is no—

THE COURT: I sustain it.

[Defense Counsel]: We'd ask the jury to be instructed to—

THE COURT: Jury will disregard.

[Defense Counsel]: Make a motion for mistrial.

THE COURT: Overruled.

Appellant now argues that such argument was a personal appeal to the jurors and asked them to place themselves in the position of the victims. As such, he states it asked them to abandon objectivity.

In *Todd v. State,* 598 S.W.2d 286 (Tex. Crim.App.1980), the court of criminal appeals fashioned the rule for what it considered to be proper argument. It stated that the argument must be (1) a summation of the evidence, (2) a reasonable deduction of the evidence, (3) an answer to argument of opposing counsel or (4) a plea for law enforcement. *Id.* at 296–97. We need not decide whether the complained-of argument was a proper plea for law enforcement because it is likewise clear that when the court instructs the jury to disregard the argument, reversal will result only where, "in the light of the record as a whole the argument is extreme or manifestly improper, it is violative of a mandatory statute, or it injects new facts, harmful to the accused, into the trial proceedings." *Brandley v. State,* 691 S.W.2d 699, 712–13 (Tex.Crim. App.1985). When we examine the argument in this light, we do not find reversible error. Appellant's sixth point of error is overruled.

The judgment is affirmed.