**Pernell LAMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–95–00380–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 30, 1997.

Discretionary Review Refused May 7, 1997.

---

Brian W. Wice, Houston, for appellant.

Keli Pool Roper, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

ANDERSON, Justice.

Appellant, Pernell Lamons, was convicted of the felony offense of injury to a child. Based on the evidence presented at trial, the jury found that the one-year-old complainant suffered serious bodily injury at the hands of appellant. On appeal, appellant raises three points of error. First, he argues that the State exercised peremptory challenges against four black veniremembers in a racially discriminatory manner in violation of the Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Second, he contends that these same peremptory strikes were exercised in violation of article 35.261 of the Texas Code of Criminal Procedure. Third, appellant contends that the trial court erred in overruling his motion for mistrial after the prosecutor referred to matters outside of the record during jury argument. We reject all three of appellant's points of error and affirm the judgment of the trial court.

In his first point of error, appellant argues that the State exercised its peremptory strikes against veniremembers No. 2, 16, 19, and 20 in a racially discriminatory manner. Appellant properly raised a *Batson* challenge at the trial level by objecting to the composition of the jury. *See Mathews v. State*, 768 S.W.2d 731, 733 (Tex.Crim.App. 1989). The trial court noted that appellant is African American, and no African American was selected for the jury. Then, the court conducted a *Batson* hearing in which the State was required to set out race-neutral reasons for striking four out of five African American veniremembers.

The Supreme Court has held that any justification for a strike, even one that is implausible or unpersuasive, should be deemed sufficiently race-neutral to rebut a prima facie case of discrimination unless the justification amounts to an equal protection violation on its face. *Purkett v. Elem*, 514 U.S. 765, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Thus, so long as the proponent of the strike offers an explanation that is not inherently discriminatory, the burden of persuasion ultimately switches to the challenging party who must persuade the court that the reason offered is merely a pretext for purposeful discrimination. *Id.* In determining whether the challenger has met this burden, the trial court must assess the credibility of the proponent of the strike and the persuasiveness of the justification for the strike. *Id.* at —— – ——, 115 S.Ct. at 1771–72.

Because the trial court observed the voir dire proceedings and listened to the prosecutor's explanations first hand, we will not lightly overturn its conclusion that, in this case, the appellant failed to carry his burden of proving racial discrimination in the prosecutor's use of peremptory strikes against the four African American veniremembers in question. We review a trial court's ruling on a *Batson* challenge using a clearly erroneous standard. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). Under this standard, this court may only reverse if a review of the voir dire record, the State's explanations, the composition of the jury panel, and the appellant's rebuttal and impeachment evidence leaves us with the definite and firm conviction that a mistake has been made. *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App. 1992).

Applying these principles to the trial court's ruling on dismissed veniremembers No. 2 and No. 16, we find no error. The prosecutor stated that she struck these veniremembers because they expressed concern about making arrangements for the care of their children during the course of the trial. Due to their child care concerns, the prosecutor feared that the jurors would be

distracted and unwilling to serve. Concern about the inattentiveness of a potential juror due to child care problems clearly does not relate to the potential juror's race. Thus, we find, as other courts have, that this justification is a race-neutral reason for exercising a peremptory challenge. *See Williams v. State,* 804 S.W.2d 95, 99, 106 (Tex.Crim. App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991) (holding all of the prosecutor's justifications for striking veniremembers were race-neutral where one of those justifications included a veniremember's child care concerns); *Broden v. State,* 923 S.W.2d 183, 186–87 (Tex.App.— Amarillo, 1996, no pet.) (holding that potential juror's expression of concern about the care of his children during trial was racially neutral reason for striking him).

■ Because veniremember No. 2 responded to questioning in such a way as to indicate that she could be a fair and impartial juror despite her child care concerns, appellant argues that the prosecutor's reason for striking her was not race-neutral. Appellant appears to be arguing that any justification for a strike that does not implicate a veniremember's ability to be impartial or fair must necessarily be a racially motivated justification. The logical result, if we accepted this argument, is that a prosecutor's justification for exercising a peremptory strike would have to rise to the level of a challenge for cause to defeat an allegation of racial motivation. *See Jones v. State,* 845 S.W.2d 419, 421 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). We reject appellant's argument, recognizing that such a requirement would virtually eliminate the unique purpose of peremptory strikes. These strikes may be exercised *for any reason whatsoever,* so long as the reason is not inherently discriminatory. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. The most fair and impartial juror may be inattentive, distracted, or otherwise unsuitable for service on a particular jury for any number of reasons unrelated to race. Because the prosecutor's reason was legitimately race-neutral in this case, it was sufficient to rebut the defendant's prima facie case. The defendant then had the burden of persuading the court that the State's reason was merely a pretext for purposeful discrimina-

tion. *Id.* In this case, the defendant's rebuttal of the prosecution's race-neutral justification consisted of his assertion that this veniremember was capable of being fair and impartial and his unsupported contention that her child care concerns "should not be sufficient to strike her." Due to the weakness of these arguments and the strength of the State's justification for the strike, we are not left with the definite and firm conviction that the trial court was mistaken in its conclusion that the defendant did not prove up his claim of purposeful discrimination in the State's strike against veniremember No. 2.

■ Veniremember No. 16 was also challenged for child care problems. Appellant argues that because the State failed to question this veniremember individually, the prosecutor's reason for challenging her must have been racially motivated. The State's failure to question a stricken veniremember sometimes indicates the weakness of the State's explanation for the strike. *Chambers v. State,* 866 S.W.2d 9, 24 (Tex.Crim.App. 1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). However, there is no absolute requirement that the State ask a specific rubric of questions. *Id.* The quantity or quality of questions the State asks a stricken veniremember is not determinative when the record otherwise supports the veracity of the State's race-neutral explanation for the strike. *Id.* In this case, the State did not need to individually question the potential juror because a race-neutral justification for striking that juror was already evident from the questions asked by the court. Because the prosecutor established a race-neutral reason for the strike, the burden switched to the defendant to show purposeful discrimination. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. Our review of the record does not leave us with the definite and firm conviction that the trial court was mistaken when it found no discriminatory motive in the State's strike of veniremember No. 16. Thus, we hold that the court's ruling as to that veniremember was not clearly erroneous.

■ The State asserted that veniremember No. 19, a 20–year–old male, was

challenged because the prosecutor feared that his youth and inexperience with children would impact his ability to understand the issues in the case. In addition, the prosecutor noted that potential juror No. 19 had a cousin in the penitentiary for aggravated robbery with whom he remained in contact— a fact that the prosecutor believed could prejudice him against the State's case. Also, after the court noted that No. 19 had been sleeping during most of the voir dire, the prosecutor requested that this fact be added to the record, as well. Each of these facts alone constitutes a race-neutral ground for striking a veniremember. *Camacho v. State,* 864 S.W.2d 524, 528 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994) (holding veniremember's youth is permissible race-neutral reason for a peremptory strike); *Emerson v. State,* 851 S.W.2d 269, 272 (Tex.Crim.App. 1993) (holding veniremember's indication that a friend or relative has a criminal history is permissible race-neutral reason for a peremptory strike); *Harrell v. State,* 882 S.W.2d 65, 67 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (holding veniremember's inattentiveness is race-neutral ground for a strike). Because the State gave race-neutral reasons for this strike, the burden of persuading the court that these justifications were not credible switched to appellant. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771.

◼ Appellant argues that, because non-African American veniremembers acknowledged that they had relatives with criminal histories and were not stricken, the fact that the State struck No. 19, an African American, indicates that this particular justification was merely a pretext for racial discrimination. We recognize, however, that potential jurors commonly possess similar objectionable characteristics, but in varying degrees. As a result, jury selection often hinges "on the interaction of a number of variables and permutations." *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). While disparate treatment of veniremembers with similar characteristics may indicate a racial bias, the record must reflect more than the mere fact that the objectionable characteristic of a stricken juror was also possessed by accepted jurors of a different racial background. *Id.* In this case, veniremember No. 19 not only had a relative with a criminal history who was still incarcerated and with whom he remained in contact, he also possessed the characteristics of inattentiveness and youth. These facts, taken in combination, provide a strong basis for the State's strike of veniremember No. 19. On the record before us, we do not find that appellant satisfied his burden of rebutting the race-neutrality of these justifications. Thus, we are not left with the definite and firm conviction that the trial court erred in ruling that the facts sufficiently set veniremember No. 19 apart from other veniremembers to justify the State's strike.

◼ Veniremember No. 20 was stricken, according to the prosecutor, due to her admission that her son had been involved in criminal activity and her reaction to questions pertaining to this topic. The prosecutor noted that No. 20 seemed affronted by her questions regarding relatives with criminal histories and was the only potential juror to ask whether she could discuss the matter privately at the bench. The court allowed her to approach the bench, but she was so upset during the discussion that she was close to tears. The intensity of this particular veniremember's feelings about her son's criminal activity set her apart from other veniremembers with similarly situated friends and relatives. The prosecutor's fear that this veniremember would be unable to put such obviously intense feelings aside constituted a race-neutral reason for striking her.

Appellant argues that, because No. 20 stated she could set her feelings about her son aside and be impartial, the prosecutor had a racial motivation for striking her. As discussed above, however, we find that so long as the State's reasons for striking a potential juror do not pertain to the juror's race, whether the juror can remain impartial is irrelevant. *See Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771; *see also Jones,* 845 S.W.2d at 421. Once the prosecutor produced race-neutral reasons for exercising this strike, the

defendant had the burden of persuading the trial court that the state excluded this venire-member on the basis of her race. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. Based on our review of the record, we hold that the court's ruling that the appellant failed to prove a racial motivation in the State's strike of this veniremember was not clearly erroneous.

Accordingly, we overrule appellant's first point of error regarding the peremptory strikes exercised against these four venire-members on the ground that the prosecutor stated race-neutral reasons to support each strike and the appellant failed to rebut those justifications by proving purposeful discrimination.

■ Appellant's second point of error challenges the peremptory strikes exercised against these same four veniremembers under Texas's statutory *Batson* provision found in article 35.261 of the Code of Criminal Procedure. However, we find that appellant waived this argument by failing to raise it in his pretrial motion or by making an objection specifically referencing article 35.261 in the court below. *Camacho v. State,* 864 S.W.2d at 527–28. Thus, we overrule appellant's second point of error.

■ In his third point of error, appellant contends that the prosecutor improperly referred to matters outside the record in his closing argument to the jury. Appellant challenged the following statement: "I have presented more evidence to you than probably would have been possible in many other states across the country." The record indicates that the trial court sustained appellant's objection to this statement and granted his request that the jury be instructed to disregard it. However, the court denied appellant's motion for a mistrial.

■ A court's instruction to disregard cures error except in extreme cases where the error is clearly calculated to inflame the jurors in such a way that it is indelibly ingrained in their minds and cannot be cured by an instruction. *Wilkerson v. State,* 881 S.W.2d 321, 327 (Tex.Crim.App.), *cert. denied,* 513 U.S. 1060, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994); *Swallow v. State,* 829 S.W.2d 223, 226 (Tex.Crim.App.1992). Appellant contends that the argument in this case was incurable because the jury "probably placed great weight on the prosecutor's improper remark."[1] However, we do not find that the remark was inflammatory, or indeed, particularly memorable. Thus, even if the State's argument was improper, it was isolated, and the instruction to disregard cured any error.[2] Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.

---

1. Appellant relies on *Kelly v. State,* 903 S.W.2d 809 (Tex.App.—Dallas 1995, pet. ref'd) to support his position that an instruction to disregard cannot cure an error such as this one. *Kelly* is distinguishable. In *Kelly,* the appellate court reversed because the defendant's objection to the State's improper jury argument was erroneously overruled. *Id.* at 812. Because the objection was overruled, the defendant did not ask for or receive an instruction to disregard the improper argument. *Id.* at 810. Thus, the issue of whether such an instruction would have cured the error was not addressed by the court of appeals. In the case *sub judice,* however, appellant's objection to the State's jury argument was sustained, and the jury was instructed to disregard the comment. Because the objection was sustained, the issue currently before this court is not whether the argument was proper, which was the issue in *Kelly,* but merely whether the argument, proper or not, was curable by an instruction to disregard. *Compare Id.* at 811–812 *with Alto v. State,* 739 S.W.2d 614, 621 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd) (holding appellant is not entitled to a mistrial because his objection was sustained and an instruction to disregard cured the error).

2. We presume that an instruction to disregard is obeyed by the jurors. *Nichols v. State,* 754 S.W.2d 185, 200 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989).