Affirmed and Memorandum Opinion filed November 8, 2005









Affirmed
and Memorandum Opinion filed November 8, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00874-CR

____________

 

LUDWIG VAN
ENRIQUEZ,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 946,635

 



 

M E M O R A N D U M   O P I N I O N








A jury convicted appellant, Ludwig Van
Enriquez, for the murder of Karol Mena and assessed punishment for life in the
Texas Department of Criminal Justice, Institutional Division.  In a single issue, appellant contends he
suffered egregious harm when the trial court failed to sua sponte
instruct the jury at the punishment phase that before it could consider prior
extraneous offenses in assessing punishment, the State must have proven those
prior extraneous offenses beyond a reasonable doubt.  Specifically, appellant objects to the jury=s use of evidence
of bruising on Mena=s body to implicate appellant domestically
abused Mena.  We affirm.  

FACTUAL BACKGROUND

On July 12, 2002, police were called to a
shooting at the Pointe Royale Apartments. 
On arriving, they found Karol Mena with a gunshot wound to her
head.  Appellant was in the apartment
with three small children.  Police found
two bullet holes in the bedroom window and one expended bullet in the wall,
indicating Mena was shot through the window. 
Appellant went with police to the police station, where he voluntarily
gave a witness statement.  In his
statement, he claimed to be feeding the children breakfast when he heard shots
coming from the bedroom.  He also told
officers about two suspects he believed might have been responsible for Mena=s death.  Based on this evidence, appellant was not a
suspect at the time.  

The autopsy results revealed the gunshot
wound to Mena=s head was a contact wound, meaning she
was shot at close range with the barrel of the gun very close to, if not
touching, her head when the shot was fired. 
This information cast doubt on appellant=s story, since he
claimed to be the only adult inside the apartment when the shots were
fired.  Police then investigated the
apartment further.   

They performed trajectory tests from the
two bullet holes in the window and found another bullet on the floor of the
bedroom.  They concluded three shots had
been fired, two through the window and one directly into Mena=s head.  Based on this information, police obtained an
arrest warrant for appellant.  A second
voluntary audio-taped statement was taken at police headquarters, and appellant
again denied shooting Mena. 

PROCEDURAL HISTORY








Appellant plead not guilty to murder.  During the guilt/innocence phase of the
trial, the medical examiner, Dr. Harminder Narula, testified about the autopsy
he performed on Mena.  He testified about
the gunshot wound to Mena=s head and bruises found on her arms,
hands, back, and thighs.  He testified
some of the bruises were slightly older than others and were consistent with
blunt force trauma.  During appellant=s second recorded statement,
the jury also heard appellant deny hitting Mena.  During closing arguments, both defense
counsel and the prosecutor commented on the bruising and whether appellant
caused it.  

The jury found appellant guilty of
murder.  During the punishment phase,
only Isabel Rivas testified.  She
testified about seeing blows and marks on Mena=s body when she
was with appellant, but she never said, nor was asked, where they came
from.  Both parties approved the jury
charge, which did not include an instruction according to article 37.07 of the
Texas Code of Criminal Procedure describing how to consider evidence of
extraneous crimes or bad acts.  The jury
assessed punishment at life in prison.  

DISCUSSION

A.                
Jury Charge at Punishment Phase  

Article 37.07 of the Texas
Code of Criminal Procedure governs the punishment charge in non-capital
cases.  Kutzner v. State, 994
S.W.2d 180, 188 (Tex. Crim. App. 1999). 
It provides in pertinent part:

[E]vidence
may be offered by the state and the defendant as to any matter the court deems
relevant to sentencing, including but not limited to . . . evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been charged
with or finally convicted of the crime or act. 









Tex.
Code Crim. Proc. Ann. Art. 37.07 '
3(a)(1) (Vernon Supp. 2004).  The plain
language of this section provides such evidence may not be considered in
assessing punishment until the fact-finder is satisfied beyond a reasonable
doubt that the extraneous bad acts and offenses are attributable to the
defendant.  Huizar v. State, 12
S.W.3d 479, 481 (Tex. Crim. App. 2000). 
Once this requirement is met, the fact-finder may use the evidence
however it chooses in assessing punishment. 
Id. at 484.  A jury
instruction to this effect is logically required, and absent such an
instruction, the jury might apply a standard of proof less than reasonable
doubt in determining the defendant=s
connection to such offenses and bad acts. 
Id.  

The State contends the
record does not reveal any bad acts evidence was admitted against
appellant.  While both Dr. Narula and
Isabel Rivas testified about bruises on Mena=s
body, the State indicates neither witness testified about who bruised the
victim, and as a result, their testimony is insufficient to impute any bad acts
to appellant.  Although it is true
neither witness stated the bruises on Mena=s
body were inflicted by appellant, that is clearly the conclusion the State wished
the jury to draw.  See Saenz v. State,
843 S.W.2d 24, 28 (Tex. Crim. App. 1992) (holding State=s
insinuation defendant was involved in prior criminal acts was unfairly
prejudicial); Alto v. State, 739 S.W.2d 614, 619 (Tex. App.CHouston [14th Dist.] 1987, pet. ref=d). 
Cf. Rayme v. State, No. 14-04-00066-CR, 2005 WL 1252198,
at *3 (Tex. App.CHouston
[1st Dist.] May 26, 2005, pet. filed) (holding no jury instruction was required
because evidence was not used or referred to by the State during the punishment
phase). 

In the State=s closing argument during the
guilt/innocence phase, the prosecutor said, AYou
look at those photos, and you want to talk about the age of those bruises.  What we do know is that they were there.  They are undisputed evidence about what that
man was putting her through.@  In addition during the punishment phase,
after telling the jury appellant deserved a life sentence, the prosecutor said,
A[Y]ou look at the ultimate tattoo that
he put in her head; and you look at the lovely little art work that he put on
her body.@  Closing argument is not evidence, but it does
serve as a summation of evidence and reasonable deduction from the evidence.  See Campbell v. State, 610 S.W.2d 754, 756
(Tex. Crim. App. 1980).  As such, the
jury could have easily concluded appellant abused Mena on prior occasions.  








In addition, when the State
rested its case at the punishment phase, it offered all evidence admitted
during the guilt/innocence phase of the trial. 
The jury may consider the evidence admitted during the guilt/innocence
phase when assessing punishment.  Duffy
v. State, 567 S.W.2d 197, 208 (Tex. Crim. App. 1978); Allen v. State,
47 S.W.3d 47, 50  (Tex. App.CFort Worth 2001, pet. ref=d) (requiring the reasonable doubt
instruction at punishment regardless of whether the evidence of bad acts was
introduced at the guilt/innocence phase or the punishment phase).  In this case, any evidence admitted during
the guilt/innocence phase pertaining to bruising on Mena=s
body may have been considered to assess appellant=s
punishment.  

Because extraneous bad acts
evidence was admitted against appellant, we hold the trial court should have sua
sponte instructed the jury pursuant to article 37.07.  Because the trial court did not do so, we now
determine whether this error was harmful. 

B.                
Harm Analysis

When the trial court fails
to instruct the jury during punishment according to article 37.07, this court
must conduct the harm analysis according to Almanza v. State, 686 S.W.2d
157 (Tex. Crim. App. 1984).  Huizar,
12 S.W.3d at 484B85.  For error not preserved by an objection made
at trial, as is the case here, the error must be so harmful the defendant was
denied a Afair and
impartial trial.@  Arline v. State, 721 S.W.2d 348, 351 (Tex.
Crim. App. 1986).  In other words, the
defendant must have suffered actual Aegregious
harm.@  Almanza, 686 S.W.2d at 171.  The harm must be actual, rather than merely
theoretical.  Dickey v. State, 22
S.W.3d 490, 492 (Tex. Crim. App. 1999); Almanza, 686 S.W.2d at 174.








Egregious harm is present
when a reviewing court finds the case for conviction or punishment was actually
made clearly and significantly more persuasive by the error.  Saunders v. State, 817 S.W.2d 688, 692
(Tex. Crim. App. 1991).  To determine
whether the error caused egregious harm, we must consider all parts of the
record that bear upon the subject, such as the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.  Almanza,
686 S.W.2d at 171.  Egregious harm is a
difficult standard and must be proved on a case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002).  

Appellant contends he
suffered egregious harm because no motive was established to explain why
appellant would kill the mother of their three children without the implication
he abused her, the prosecutor=s
argument to the jury linking the bruises to appellant was inflammatory, and
nothing in the jury charge cures the omission of the reasonable doubt
instruction.  Appellant further argues
there were no guidelines for the jury=s
consideration of domestic abuse evidence, and the result was a life
sentence.  Appellant also contends there
is no admitted evidence linking appellant to the bruises found on Mena=s body, only speculation raised by the
prosecutor during closing arguments. 

The jury charge authorized
the jury to take into consideration all the facts shown by the evidence
admitted before them:  AYou are further instructed that in
fixing the defendant=s
punishment, which you will show in your verdict, you may take into
consideration all the facts shown by the evidence admitted before you in the
full trial of this case and the law as submitted to you in this charge.@ 
This jury instruction, without the reasonable doubt limitation required
by article 37.07, is troubling.  Allen,
47 S.W.3d at 52.  However, that concern
is offset by the other evidence before the jury.  See id; Huizar v. State, 29 S.W.3d
249, 251 (Tex. App.CSan
Antonio 2000, pet ref=d)
(on remand). 

The bruises on Mena=s body were only part of the evidence
the jury had to consider in assessing punishment.  Some of the other evidence before the jury
included: Mena=s mother=s concern over appellant=s 
knowing where she and the children now live for fear if he ever got out
of prison; police testimony appellant accidentally shot himself in the leg with
a small caliber pistol three months before Mena=s
death; appellant=s
admitted participation in gang activity in California; and testimony that Mena=s death was caused by a close contact
entry wound to the head, demonstrating the gun was close to, or touching, her
head when fired. 








The jury also considered
appellant=s two
prior convictions in California for battery and a hit and run.  Appellant stipulated to these convictions
before resting his case during the punishment phase, and the convictions were
read to the jury.  The record also shows,
during punishment deliberations, the jury asked to see appellant=s penitentiary packet, which was
comprised of the two convictions in California. 
Because these convictions had been properly adjudicated and were part of
the defendant=s
criminal record, no article 37.07 instruction was required before they could be
considered by the jury in this case.  Bluitt
v. State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).   

On remand to consider the
harm analysis under Almanza, the court of appeals in Huizar
considered the evidence heard by the jury, which consisted of many more
extraneous offenses and bad acts than are present here.  Huizar, 29 S.W.3d at 251 (on
remand).  Evidence in that trial included
repeated acts of violence towards the defendant=s
ex-girlfriend=s property
and harassment towards her personally, opinion testimony from a narcotics
officer that the defendant was not a peaceful or law-abiding citizen, and
sexual assault of a minor.   Huizar v.
State, 966 S.W.2d 702, 706B07
(Tex. App.CSan
Antonio 1998, pet. granted), rev=d,
12 S.W.3d 479 (Tex. Crim. App. 2000). 
Yet, that court did not find egregious harm when the resulting sentence
was 99 years in prison.  Huizar,
29 S.W.3d at 251 (on remand).  

Here, the jury=s consideration at punishment of the
inference appellant was physically abusive to Mena without an article 37.07
instruction may be evidence of some harm, but it is not evidence of egregious
harm.  Other evidence was also introduced
and considered by the jury involving appellant=s
prior convictions in California for battery and a hit and run.  Although a sentence of life in prison may
seem to be  harsh, that sentence is
within the range of punishment for murder and is justified by the totality of
the evidence before the jury.  See
Allen, 47 S.W.3d at 52; Huizar, 29 S.W.3d at 251 (on remand).  Accordingly, we find no egregious harm in the
court=s failure
to sua sponte instruct the jury pursuant to article 37.07 and overrule
appellant=s sole
issue on appeal.  








CONCLUSION

The judgment of the trial
court is affirmed.

 

 

 

/s/         John
S. Anderson

Justice

 

 

 

 

Judgment rendered and
Memorandum Opinion filed November 8, 2005.

Panel consists of Chief
Justice Hedges and Justices Yates and Anderson.

Do Not Publish C Tex.
R. App. P. 47.2(b).