Clinton **BARRIE**, Appellant,

v.

**STATE of Texas**, State.

No. 2–83–214–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 25, 1983.

Don Black, Dallas, for appellant.

Deborah E. Farris, Dallas, for appellee.

Before HUGHES, BURDOCK and SPURLOCK, JJ.

OPINION

SPURLOCK, Justice.

Appellant, Clinton Barrie, was found guilty by the trial court of burglary of a building. See Tex.Penal Code Ann. sec. 30.02 (Vernon 1974). Punishment was assessed by the court at five years imprisonment. Barrie asserts, in a single ground of error, that the evidence was insufficient to support the conviction.

We reverse and dismiss.

The complainant testified he discovered that his auto salvage business had been broken into between 9 p.m. on the night of September 2, 1980, and 8 a.m. on the morning of September 3, 1980. He said that the top section of a roll-around type toolbox, floor jacks, an electric welder, impact wrench, sockets for that wrench, foreign and American car parts, and two Ford automobile starter motors were missing, as well as a battery charger and some radiators. Many parts and tools were scattered about the premises. The burglar cut a chain link security fence and pried a door away from the building to gain entry. The record contains no other testimony concerning the actor's entry. No one saw the defendant around the building during the time in question and he was not linked in any other way to the actual entry of the building. The complainant stated that after a policeman had arrived and taken a report, the complainant and a friend went on a search for the stolen goods. The complainant said that the two Ford starter motors had been marked with the inscription "A-1" in iridescent pink with an indelible pencil.

They entered the Bishop Core Company, which buys used auto parts for the purpose of rebuilding them for resale, and received permission from D.L. Cowan, Jr., the manager, to look for any parts which might have been stolen from the complainant and then sold to Bishop's. The complainant testified that he located the two stolen Ford starter motors in a grocery store type cart near the front door. The cart contained other such motors. He testified that he then talked with Cowan, who told him that Barrie had sold some parts to Cowan that morning, although Cowan could not recall what parts were sold by Barrie. The complainant said that Cowan determined that he had paid Barrie $14.00 that day and told the complainant that this was the price he would have paid for two such motors. The complainant returned to his shop and called police, to whom he related the above events. Officer Pruett then went to see Cowan, and seized the starter motors. An arrest warrant was issued for Barrie's arrest.

Cowan testified that he opened his shop around 7:30 a.m. on the morning following the burglary of the complainant's building. Barrie had come into his business and sold Cowan some auto parts, but Cowan could not remember, either later that same morning or at trial, what parts he bought from Barrie. There is evidence to the effect that Cowan may have paid Barrie $14.00 by check, and Cowan stated that $14.00 is the amount he would have paid for two starter motors. Such motors would have been placed inside the aforementioned cart, but Cowan said that he did not recall any markings upon the parts which the complainant received from the cart. Cowan stated that the police came and took the two starter motors later that day. (The record does not reflect that these starter motors were introduced as evidence.) Cowan also testified that he had no recollection of writing a $14.00 check to Barrie, or of what Barrie might have sold him, and "could not possibly say" that he recalled that Barrie brought him any starter motors, or how many such parts Barrie might have sold to him. Cowan pointed out that there were thousands of starter motors on the premises at any given time, and that he couldn't identify the motors which were taken away by police as the same motors he may have purchased from Barrie.

Officer Pruett testified that he seized two starter motors as a result of a conversation he had with Cowan.

Officer Barhn testified that he arrested Barrie some months after the offense at the home of Barrie's father. Barhn approached the rear of the home as other officers knocked on the front door and identified themselves. Barrie quickly came out onto the rear screen porch, climbed on top of a refrigerator, and thence to the attic, where he was arrested. Apparently, this testimony was offered as evidence of "flight", to establish the presumption of Barrie's guilt.

Barrie testified that on the night in question, he was driving on the street upon which the burglarized shop was located in the company of his girlfriend, Barbara Wafer (who apparently is now Barrie's wife), and ran over something in the road which caused one of his tires to go flat. He got out of his vehicle to investigate, and found two automobile starter motors wired together along with a crescent wrench lying in the road way. (The wrench was admitted into evidence). He picked these items up and put them in his car. The next morning Barrie changed the flat and noted that the starter motors had bent the rim of his "mag" wheel and cut his tire. Barrie went to Bishop's that morning and sold the two starter motors to Cowan. Barrie said that he saw no marks upon the two motors, which were dirty and greasy. Barrie testified that he went to Bishop's around two or three times a week at that time, because he then worked for an auto shop, and was sent often to Bishop's to sell parts. Cowan would pay him, and he would turn over payment to the owners of the shop when he returned to work. Barrie explained that he tried to hide from the arresting officers because he had numerous outstanding tickets from the City of Grand Prairie, and thought that the police had come because of these tickets, which he could not then afford to pay. He was "going to try to hold off as long as I could" on paying these tickets.

Barbara Wafer Barrie testified that she was with Barrie when he ran over something in the road on the night in question. Barrie stopped the car and alighted from it to see what they had run over. Barbara remained in the car. She saw Barrie return with the wrench, and observed that he opened the trunk, but did not see him with any starter motors. She stated that Barrie remained in her company throughout the night. Barbara said that Barrie got up the next morning and changed the flat tire. Barrie did not tell her about the starter motors, and she said that she did not know whether or not Barrie picked up any starter motors from the road on the evening in question.

Officer Pruett then testified that Barrie's reputation in the community for truthfulness and veracity was bad.

"It is true that the recent, unexplained possession of property taken in a burglary is sufficient to sustain a conviction for burglary." (Citations omitted). *Thompson v. State*, 615 S.W.2d 760, 761 (Tex.Cr.App. 1981). However,

"When possession of stolen property alone is relied upon for conviction for burglary, the possession must be recent, personal, unexplained and must involve a distinct and conscious title to the property by the defendant (Citations omitted)." *Dow v. State*, 626 S.W.2d 93, 97 (Tex.App. —Corpus Christi 1981).

█ Here, the record reflects no evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that every element of the offense had been proven by the State. The property alleged to have been recovered from the Bishop Core Company, namely the two Ford starter motors, was arguably shown by the complainant's testimony to have been the property stolen. However, there was no evidence adduced at trial showing that Barrie ever possessed *the two specific starter motors* allegedly stolen from the complainant. *See Owens v. State*, 576 S.W.2d 859, 860–1 (Tex. Cr.App.1979). Therefore, no presumption or inference of the defendant's guilt of the offense of burglary arises, as the State has not shown that Barrie possessed recently stolen property.

"In a circumstantial evidence case, there must be proof to a degree of certainty greater than a mere probability or suspicion

tending to establish that the party charged was the person who committed the offense. *Donovan v. State,* 539 S.W.2d 884 (Tex.Cr. App.1975). *Proof amounting only to a strong suspicion or a mere probability of guilt is insufficient. Young v. State,* 544 S.W.2d 421 (Tex.Cr.App.1976); *Randolph v. State,* 505 S.W.2d 845 (Tex.Cr.App.1974)." (Emphasis added). *Montoya v. State,* 625 S.W.2d 25, 28 (Tex.App.—San Antonio 1981).

■ Furthermore, even had the State shown Barrie's possession of recently stolen property, "Where a defendant's explanation is reasonable and is sufficient to rebut the circumstances of possession of property recently stolen, the evidence is insufficient to sustain the conviction if it fails to show that the explanation was false (citation omitted). Since the evidence in the case at bar does not refute or establish the falsity of the explanation given by the appellant at the scene of his arrest, the State's proof does not justify the inference or presumption that he committed the burglaries (citations omitted)." *McLemore v. State,* 638 S.W.2d 211, 214 (Tex.App.—Houston [1st Dist.] 1982). Here, the evidence does not refute or establish the falsity of Barrie's explanation of how he acquired the two starter motors, thus the State's proof does not justify the inference or presumption that he committed the burglary.

■ Since flight or attempted flight after commission of a crime is not alone sufficient to create a presumption of guilt, we will not address the question of whether Barrie's flight should have been considered as evidence of his guilt, notwithstanding his explanation of it as resulting from his fear of arrest for extraneous offenses.

We sustain Barrie's ground of error, reverse the conviction and judgment is reformed to reflect his acquittal. *See Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).