haley 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-154-CR





MARK HALEY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 101,639, HONORABLE MACE B. THURMAN, JR., JUDGE PRESIDING



 





 Appellant, Mark Haley, was convicted by a jury of burglary of a building. Tex.
Penal Code Ann. § 30.02(a)(3) (1989). He was sentenced to ten years plus one day in the Texas
Department of Criminal Justice, Institutional Division. Appellant brings this appeal contending
he was found guilty on the basis of insufficient evidence. He also presents points of error
contending deprivation of his rights under the due process and confrontation clauses of the United
States and Texas Constitutions. This Court will affirm the conviction.

 A burglary occurred at the Souper Salads restaurant on Middle Fiskville Road in
Austin, early in the morning of February 14, 1990. The lid to the safe and a money-bag
containing cash were stolen from the restaurant safe. Appellant was arrested based on a match
between his license-plate number and that of a car seen leaving the scene and on identification by
a witness who was in the parking lot outside the burglarized establishment. 


A.  Sufficiency of the Evidence

 In points of error one through three, appellant complains that the evidence was
insufficient to support his conviction. 

 The standard of review to sustain a criminal conviction on the basis of sufficiency
of the evidence is whether, viewing the evidence in the light most favorable to the prosecution,
any rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159
(Tex. Crim. App. 1981). Each fact need not point directly and independently to the guilt of the
accused, if the cumulative effect of all the facts is sufficient to support the verdict. However
proof must be more than a strong suspicion or mere probability. Carlsen v. State, 654 S.W.2d
444, 447 (Tex. Crim. App. 1983); see also Moone v. State, 802 S.W.2d 101, 102-05 (Tex. App.
1990, pet. ref'd). Where the conviction is based on circumstantial evidence this standard remains
the same, but the prosecution has the burden of excluding every other reasonable hypothesis
except the guilt of the accused. Garrett v. State, 682 S.W.2d 301, 304 (Tex. Crim. App. 1984). (1) 
In this cause, however, appellant has failed to raise an alternate reasonable hypothesis. 

 In order to convict for burglary of a building under the section charged the State
must prove: entry of a building; without the consent of the owner; and commission or attempted
commission of a felony or a theft. Tex. Penal Code Ann. § 30.02(a)(3) (1989). The testimony
at trial established that the State met this burden. 

 Most of the evidence at trial came from an eyewitness, Art Chapa, who was in his
truck parked at the Walmart loading dock in the same strip mall as Souper Salads. Chapa had just
retired to the sleeper portion of his truck when he heard a car pull up and park near-by. Chapa
peered out the window at the approaching man. The man walked past the truck and out of
Chapa's view. Chapa thought the man was checking the loading dock and moved into the driver's
seat to await his return. From there Chapa observed in his side-view mirror the man return with
the top or front lid to a safe in one hand and a loaded money-bag in the other. Suspecting a
burglary, Chapa hunched down in his seat to avoid discovery and continued to watch the man
through his side window and windshield. Chapa noted the license number of the man's car as it
left.

 Chapa made a report to Walmart's loss prevention department after completing his
delivery the next day. This report was forwarded to the Austin Police Department, which then
traced the license number and started an investigation of the car's owner, the appellant. Chapa
subsequently identified appellant in a photographic lineup discussed in more detail below. After
that identification, further investigation focused on possible access and motive for appellant to
commit the burglary.

 Souper Salads managers testified that appellant was a prior employee who had 
possessed both the keys to the restaurant and the combination to the safe. The managers also
testified that appellant had recently been fired for suspected improprieties and did not have
permission to go onto the property or to remove anything. Police experts testified that the method
of the burglary, including the taking of the safe lid, indicated that the crime was probably
committed by someone who knew the combination. (2) Appellant's wife testified to his need for
money, supplying a financial motive for the burglary.

 The most difficult element to prove with circumstantial evidence was the element
of actual entry and theft. Appellant was not apprehended while still in possession of traceable
stolen property; but he was seen in the area the night of the crime, in possession of property
substantially similar to that missing from the restaurant. The witness identified the objects in the
appellant's hands as the same type of objects as those stolen in the burglary, although he
misidentified the color of the safe lid. (3)

 Appellant argues that in the absence of direct evidence of his entry into and theft
from the Souper Salads restaurant, the State must rely on a permissible inference of theft, which
can only be created by a suspect's unexplained possession of recently stolen property. Citing
cases including Owens v. State, 576 S.W.2d 859 (Tex. Crim. App. 1979) and Barrie v. State, 656
S.W.2d 675 ( Tex. App. 1983, no pet.), appellant contends that the State has failed to sufficiently
prove that the property in the hands of the suspect was the stolen property and, therefore, has
failed to prove all elements of the offense.

 Appellant's contention misses the mark. While these cases require specific
identification that the goods found were those stolen in order to support a burglary conviction
solely on the basis of a defendant's unexplained possession of recently stolen property; there are
other means of proving burglary by circumstantial evidence. The State argues that its case is
based upon circumstantial evidence from the eyewitness Chapa's identification of appellant at the
scene with objects substantially similar to those reported stolen. In this type of case, the objects
seen in the hands of appellant serve as one more link in a general chain of circumstantial evidence
and the weight to be given this link is an issue for the jury to determine. Cf. Carlsen v. State, 654
S.W.2d 444, 449 (Tex. Crim. App. 1983) (even in circumstantial evidence cases the standard of
review is whether the trier of fact could have found the essential elements beyond a reasonable
doubt); see also Jones v. State, 458 S.W.2d 89, 92 (Tex. Crim. App. 1970).

 In a circumstantial evidence case, the jury is allowed to view all the evidence
together and decide whether there is sufficient evidence to find each element of the crime. Dunn
v. State, 721 S.W.2d 325, 327 (Tex. Crim. App. 1986). The State contends that the evidence
presented was sufficient to allow a rational trier of fact to make this determination beyond a
reasonable doubt. Jackson v. Virginia, 433 U.S. 307, (1979). We agree. Points of error one
through three are overruled.



B.  Photographic Lineup

 In points of error four through seven, appellant contends that the trial court erred
in admitting Chapa's in-court identification of appellant because it resulted from an impermissibly
suggestive and tainted photographic lineup which, violated appellant's right to due process under
the United State's Constitution and due course of law under the Texas Constitution.

 The police asked Chapa to come down to the station and look at some photographs. 
Before showing him the photographs, Officer Johnson asked Chapa to compare the license plate
number he had written down on the night of the burglary with the license plate number of a car
that the investigator thought was at the scene. The license plate numbers matched. The officer
did not tell Chapa that any person in the lineup was connected to the car. The officer then asked
Chapa to look at six pictures. 

 The testimony of the events during the photographic lineup, given at both a pretrial
hearing on a motion to suppress and at the trial, is somewhat unclear. The officer's report reflects
that Chapa said he could not make a positive identification from the pictures. Next, Chapa
pointed to one picture, not that of appellant, stating that that photograph looked like the person
he had seen. Officer Johnson then pointed to the picture of appellant and asked if "it could also
be this one." Chapa indicated that it could be appellant and that he was wavering between the first
photograph he had pointed to, and appellant's photograph. Chapa then said that, on looking more
closely at appellant's photograph, he was sure that that was the man because the hair was correct. 
Officer Johnson testified that after the photographic lineup he might have indicated to Chapa that
appellant's picture matched with the owner of the automobile license plate number Chapa recorded
the night of the offense.

 Chapa testified at the pretrial hearing that at the time of the photographic lineup he
was wavering between the two pictures and could not recall if he had pointed out one or the other
before the officer pointed to appellant's picture. Chapa recalls the officer pointing to the picture
of appellant and saying to look at both pictures real closely. However, Chapa testified that he had
trouble remembering the exact events during the lineup. 

 Determining if pretrial lineup procedures violate due process protections calls for
a two-step inquiry. Under the guidelines announced by the United States Supreme Court, a lineup
violates due-process requirements, if it is impermissibly suggestive and results in a substantial
likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 384 (1968). 
Thus, even if the lineup is found to be impermissibly suggestive, the in-court identification may
still be admissible if the record shows that it is based on observations made by the witness at the
time of the offense. Coleman v. Alabama, 399 U.S. 1 (1970); Herrera v. State, 682 S.W.2d 313,
318 (Tex. Crim. App. 1984). In making this inquiry, the lineup procedures used must be
examined in context of the totality of the circumstances, and each case examined on its own facts. 
Stovall v. Denno, 388 U.S. 293, 302 (1967); Simmons, 390 U.S. at 384. 

 Texas has adopted the United States Supreme Court's list of factors to be
considered in determining whether the in-court or in-person identification is based on observations
made at the time of the offense and not on a suggestive lineup identification. These factors are:
opportunity to observe at the time of the offense; discrepancy between the pre-lineup description
and the defendant's actual appearance; identification of another person prior to the lineup; prior
identification of the defendant; failure to identify defendant prior to the suggestive lineup; and the
amount of time between the offense and the lineup. United States v. Wade, 388 U.S. 218, 241
(1967); Herrera, 682 S.W.2d at 318. 

 Admissibility of the in-court identification hinges on the testimony that it was based
on observations made by the witness at the time of the offense. Jackson v. State, 657 S.W.2d
123, 130 (Tex. Crim. App. 1983). Appellant filed a motion to suppress evidence as a result of
the alleged suggestive photographic lineup identification. A pretrial hearing was held on that
motion. At that hearing, appellant contended that the suggestive photographic lineup along with
the disclosure that the license plate number matched appellant's automobile, so solidified
appellant's identity in Chapa's mind that Chapa's subsequent in-court identification was
irreparably tainted and to permit its introduction would violate his constitutional due-process
rights. At the pretrial hearing, Chapa testified that he had just seen appellant as he was about to
enter the courtroom and recognized him with certainty, as opposed to anyone else in the hallway
or courtroom, even though he was not sitting at the counsel table, or otherwise identified as the
defendant. He testified (both at the pretrial hearing and outside the presence of the jury at the
trial) that he had not expected to see a defendant go into the courtroom at that moment but had
recognized appellant's walk, as well as his overall appearance from the side and back,
corresponding to his memories from the night of the offense. Thus, Chapa testified that his in-court identification of appellant as the individual in the parking lot the night of the burglary was
not based upon the photographic lineup but was based upon his later observation of appellant at
the pretrial hearing.

 When applied to this record, the Supreme Court's factors yield the following
testimony to support the admissibility of the identification. Chapa had a long time to observe
appellant the night of the burglary as appellant walked back and forth in close proximity to
Chapa's truck. Chapa particularly could observe the way appellant moved and appellant's
appearance from the side and back. It was both his observation of appellant's walk and those
views of appellant that solidified the in-court identification at the pretrial hearing. Any
discrepancies between the appearance of appellant and Chapa's original description are minor
errors in estimating height and weight.

 By contrast, Chapa did have difficulty in identifying appellant's photograph, and
he initially identified a different suspect. However, Chapa explained the confusion was due to a
difference in the amount of appellant's facial stubble in the picture and on the night of the
burglary. Although the pretrial identification of appellant took place a few months after the
photographic lineup, the delay was not long enough to be an influential factor.

 We note that in this cause the district court examined the identification issue in both
a pretrial hearing on appellant's motion to suppress and testimony taken outside the presence of
the jury during trial. On both occasions the trial court was persuaded to admit the in-court
identification. The judge stated that he based his admission of the in-court identification during
the trial, on the witness' testimony regarding the source of his recognition of appellant. Where
the trial court acts as a fact finder in evidentiary hearings, issues of the credibility of the witnesses
and the weight to be given their testimony are best left to the trial court's discretion. Port v.
State, 798 S.W.2d 839, 842 (Tex. App. 1990, pet. ref'd). On review of the trial court's decision,
the appellant has the burden of proving that the in-court identification was impermissibly tainted. 
Jackson v. State, 628 S.W.2d 446 (Tex. Crim. App. 1982). This Court holds that appellant has
not met his burden and that the in-court identification was properly admitted.

 Because the admission of the in-court identification was permissible whether or not
the lineup procedure was impermissibly suggestive, this Court need not address that issue. 
However, this ruling should not be taken as approval of the investigating officer's conduct in
pointing to appellant's picture, or in mentioning that the automobile with the license plate number
recorded at the scene of the burglary belonged to appellant. Appellant's points of error four
through seven are overruled.


 

C.  Due Process Points of Error

 Appellant contends in points of error eight and nine that an intentionally suggestive
police investigation denied him due process of the law as guaranteed by the United States
Constitution and due course of law as guaranteed by the Texas Constitution. He refers
specifically to the photographic identification procedure and also to the failure to retain the
original notation of the license-plate number by the eyewitness, Chapa. This Court has found
above that, regardless of whether the officer's conduct during the photographic lineup was
suggestive, the in-court identification was not tainted and therefore did not deprive appellant of
due process or due course of law. Although the procedure followed by the investigating officer
in not requiring the witness Chapa to retain his original notation of the license plate number might
have been negligent, the record suggests no bad faith. Appellant relies on Ex Parte Brandley, 781
S.W.2d 886, 894 (Tex. Crim. App. 1989) for support, but the actions by the authorities in this
cause do not approach the improper conduct in Brandley. In that case, witnesses were threatened
with imprisonment for suggesting alternate defendants, exculpatory witnesses were not revealed
to the defense, and witnesses were physically abused by the police. Id. In this cause, although
the investigating officer may not have conducted a perfect investigation, his conduct did not create
a fundamentally unfair trial. Arizona v. Youngblood, 488 U.S. 51, 57-8 (1988). Points of error
eight and nine are overruled.



D.  Confrontation Clause Points of Error

 In points of error ten through thirteen, appellant contends that by certain
evidentiary rulings on impeachment testimony the trial court violated his rights under the
confrontation clause of both the United States and Texas Constitution. U.S. Const. amend. VI;
Tex. Const. art. I, § 19. However, the basis of appellant's claim is not a complete refusal to
allow cross-examination, but an evidentiary ruling on the proper basis for impeachment evidence. 
The trial court did not allow appellant to present extrinsic evidence of impeachment against Chapa
on two issues:  (1) the type of safe the front or lid came from, and (2) whether the appellant had
a distinctive walk.

 On direct examination, Chapa testified that one of the objects he saw in appellant's
hand on the night of the offense was the lid of a floor safe. He also testified that his identification
of the appellant was solidified due to his distinctive walk. Counsel for the appellant taped a
telephone interview with Chapa prior to either the pretrial hearing on the motion to suppress or
the actual trial. In that interview, Chapa made statements inconsistent with those elicited on direct
examination at trial. Appellant attempted to use a transcript of this interview as extrinsic
impeachment evidence at trial. 

 On cross-examination by appellant's counsel, Chapa admitted that he might have
said in an earlier discussion that the object in appellant's hand that night could have been from
either a wall or floor safe, but he did not recall saying so. Further, if he had said such a thing,
it would have been a truthful reflection of his thoughts. He also admitted that, although he did
not recall, he might have failed to mention appellant's distinctive walk in his telephone interview
despite being specifically asked if he had noticed a peculiar walk that night. Appellant tried to
present extrinsic evidence of these statements as impeachment evidence but was not permitted to
do so by the trial court. 

 The trial judge ruled that the witness had sufficiently admitted the statements in
question and that therefore extrinsic evidence of a prior consistent statement for impeachment was
not permitted under Tex. R. Crim. Evid. Ann. 612(a) (Supp. 1991). Trial courts are given
considerable discretionary latitude in the admission or exclusion of evidence. Cf. Smith v. State,
683 S.W.2d 393, 403 (Tex. Crim. App. 1984) (admissibility of photographic evidence is within
discretion of trial court); Hernandez v. State, 484 S.W.2d 754, 755 (Tex. Crim. App. 1972)
(admissibility of circumstances surrounding arrest are within discretion of trial judge, and are not
grounds for reversal absent abuse of discretion). From a review of the record, we find no abuse
of the trial court's discretion in this regard. Accordingly, these points of error are overruled.



E.  Hearsay Points of Error

 Appellant in his brief raises two points of error as to hearsay evidence admitted
over objection. During oral argument, appellant conceded that in fact these points had been
waived by failure to object upon the first testimony concerning the information sought to be
excluded. Girndt v. State, 623 S.W.2d 930, 934-5 (Tex. Crim. App. 1981). Therefore, points
of error fourteen and fifteen are overruled.

 The judgment of the trial court is hereby affirmed.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: December 11, 1991

[Do Not Publish]
1. [1]  This Court notes that the alternate-reasonable-hypothesis-of-innocence analytical
construct was disapproved and Carlsen v. State overruled by the Court of Criminal Appeals
this month in Geesa v. State, No. 290-90 (Tex. Crim. App., Nov. 6, 1991). However, the
Court of Criminal Appeals has ruled that this change is to be applied with limited
prospectivity; i.e., only to the case in which it was announced and those cases tried subsequent
to the change. Id. Since this case was tried before Geesa was handed down, that opinion does
not apply to this review. 
2. [2]  Police burglary experts testified that in most solved cases where the safe lids were taken
the burglar was someone who knew the combination, and who took the safe lid to disguise the
lack of forced entry. 
3. [3]  The State introduced into evidence exemplars of the objects stolen in the burglary. 
Souper Salads managers identified them as being substantially similar in color, size, and shape
to those taken. The eyewitness Chapa's description of the objects he had seen in appellant's
possession on the night of the burglary substantially matched the exemplars. Mr. Chapa also
testified to his familiarity with small safes, which allowed him to be certain that one of the
objects was the top or front of a small floor or wall safe.