PD-1594-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/7/2015 4:41:07 PM
Accepted 12/10/2015 5:09:21 PM
ABEL ACOSTA
CLERK

NO. _____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## SAMMY LEE SMITH, JR.

## v.

## THE STATE OF TEXAS

---

From the Waco Court of Appeals
Cause No. 10-14-00268-CR

## APPELLANT SAMMY LEE SMITH, JR.'S
## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

December 10, 2015

ABEL ACOSTA, CLERK

**E. Alan Bennett**
State Bar #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone: (254) 772-8022
Telecopier: (254) 772-9297
Email: abennett@slmpc.com

# Identity of Judge, Parties and Counsel

Appellant, pursuant to Rule of Appellate Procedure 68.4(a), provides the following list of the trial court judge, all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel.

**THE TRIAL COURT:**

| | |
|---|---|
| Hon. T. Bradley Cates<br>County Court at Law #2, McLennan County<br>501 Washington Avenue, Room 210<br>Waco, Texas 76701 | Trial Court Judge |

**THE DEFENSE:**

| | |
|---|---|
| Sammy Lee Smith, Jr. | Appellant |
| E. Alan Bennett<br>510 North Valley Mills Drive, Suite 500<br>Waco, Texas  76710 | Trial and Appellate Counsel |

**THE STATE:**

Gina Avery                                                    Trial Counsel for the State
Aubrey Robertson
Assistant Criminal District Attorneys

Sterling Alan Harmon                                         Appellate Counsel
Gabriel Caleb Price                                             for the State
Assistant Criminal District Attorneys

Abelino Reyna
McLennan County Criminal District Attorney
219 North Sixth Street, Suite 200
Waco, Texas  76701

# Table of Contents

Identity of Judge, Parties and Counsel ............................................................ 2

Table of Contents ........................................................................................... 4

Index of Authorities........................................................................................ 6

Statement Regarding Oral Argument............................................................... 9

Statement of the Case ..................................................................................... 9

Statement of Procedural History ..................................................................... 9

Grounds for Review ......................................................................................10

Reasons for Granting Review ........................................................................10

Argument......................................................................................................11

    1.   The Waco Court erred by failing to follow its "first duty" and address Appellant's claim of error in the jury charge. ...............................................11

        A.   An Appellate Court's "First Duty" Is to Address the Merits of a Jury Charge Complaint. ...............................................................................11

        B.   Jurisprudential Reasons Dictate That the Error Claim Be Addressed. ................................................................................................14

            1.   The Charge Must Accurately State the Law. ................................14

            2.   The Charge Must Tailor the Definitions of the Culpable Mental States to Correspond to the Applicable Conduct Elements. ...............15

            3.   Texas Trial Courts Need Guidance on This Unsettled Issue.......16

C.    Summary. ...................................................................................17

D.    The Court Should Grant Review on This Issue. ..............................17


2.    Was the error in jury charge regarding the definition of "intentional" effectively cured merely because the application paragraph quoted the relevant statutory language? .........................................................................19

A.    The Application Paragraph Did Not Fix the Problem. ....................19

B.    Terroristic Threat Requires a Properly Focused Definition. ..........20

C.    Appellant Had to Show Only "Some Harm." ................................22

D.    The Court Should Grant Review on This Issue. ..............................23


Prayer ......................................................................................................24

Certificate of Compliance........................................................................25

Certificate of Service ...............................................................................25

Appendix .................................................................................................26

# Index of Authorities

## Texas Cases

*Alaniz v. State*, 2015 WL 4710289 (Tex. App.—Waco Aug. 6, 2015, pet. filed) ....................................................................................................................13

*Anderson v. State*, 2015 WL 6584041 (Tex. App.—Waco Oct. 29, 2015, pet. filed) ...............................................................................................................13

*Arline v. State*, 721 S.W.2d 348 (Tex. Crim. App. 1986)............................12, 22

*Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009)................................12

*Burns v. State*, 2015 WL 5092061 (Tex. App.—Waco Aug. 27, 2015, pet. ref'd) ....................................................................................................................13

*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994) ....................................16

*Deener v. State*, 214 S.W.3d 522 (Tex. App.—Dallas 2006, pet. ref'd) ............13

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1994) .........................14, 20

*Garcia v. State*, 2015 WL 1020876 (Tex. App.—Waco Mar. 5, 2015, pet. ref'd) ....................................................................................................................13

*Garza v. State*, 2006 WL 668386 (Tex. App.—Beaumont Mar. 15, 2006, pet. ref'd) ...................................................................................................................13

*Gillette v. State*, 444 S.W.3d 713 (Tex. App.—Corpus Christi 2014, no pet.)........................................................................................................16, 21

*Gonzalez Soto v. State*, 267 S.W.3d 327 (Tex. App.—Corpus Christi 2008, no pet.)....................................................................................................................13

*Grizzle v. State*, 2015 WL 222349 (Tex. App.—Waco Jan. 15, 2015, pet. ref'd) ....................................................................................................................13

*Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996).................................15

*Lee v. State*, 442 S.W.3d 569 (Tex. App.—San Antonio 2014, no pet.)............13

*Lovings v. State*, 376 S.W.3d 328 (Tex. App.—Houston [14th Dist.] 2012, no pet.) .................................................................................................13

*McGee v. State*, 2015 WL 3799362 (Tex. App.—Eastland June 11, 2015, no pet.) ............................................................................................................12

*Michaelwicz v. State*, 186 S.W.3d 601 (Tex. App.—Austin 2006, pet. ref'd)...13

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) .....................................12

*Phillips v. State*, 463 S.W.3d 59 (Tex. Crim. App. 2014)..................................12

*Plata v. State*, 926 S.W.2d 300 (Tex. Crim. App. 1996)....................................19

*Price v. State*, 457 S.W.3d 437 (Tex. Crim. App. 2015) ..............................16, 21

*Ragan v. State*, 2013 WL 6797734 (Tex. App.—Tyler Dec. 20, 2013, no pet.).13

*Rodriguez v. State*, 456 S.W.3d 271 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ...........................................................................................................12

*Sakil v. State*, 287 S.W.3d 23 (Tex. Crim. App. 2009) .....................................15

*Smith v. State*, 2015 WL 6777600 (Tex. App.—Waco Nov. 5, 2015, pet. filed) .....................................................................................................................13, 22

*Steele v. State*, 2015 WL 1877039 (Tex. App.—Waco Apr. 23, 2015, pet.) ......13

*Vanover v. State*, 2014 WL 4351416 (Tex. App.—Texarkana Sept. 3, 2014, pet. ref'd) .................................................................................................................12

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012).........................14, 20

*Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009)..............................15

*Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008)................................22

*Williams v. State*, 547 S.W.2d 18 (Tex. Crim. App. 1977)................................15

## Texas Statutes

TEX. CODE CRIM. PROC. art. 36.14 .......................................................................14

TEX. PEN CODE § 22.07(a)(2) ..............................................................................21

TEX. PEN. CODE § 22.01(a)(1) .............................................................................21

## Rules

TEX. R. APP. P. 66.3 ...........................................................................10, 17, 18, 23

## Treatises

43 GEORGE E. DIX. & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 43:5 (3d ed. 2011) ................................................15

## Statement Regarding Oral Argument

Appellant does not believe that oral argument will aid the decisional process.  However, should the Court decide differently, Appellant respectfully requests the opportunity to appear and present oral argument.

## Statement of the Case

A jury convicted Appellant of terroristic threat.[1]  The jury assessed his punishment at 180 days' confinement in the county jail. The trial court sentenced Appellant in accordance with the verdict.

## Statement of Procedural History

The Waco Court of Appeals affirmed Appellant's conviction in a unanimous opinion authored by Justice Scoggins that was handed down November 5, 2015.  No motion for rehearing was filed.

---

[1]    The same jury acquitted Appellant of criminal trespass.

# Grounds for Review

1.  The Waco Court erred by failing to follow its "first duty" and address Appellant's claim of error in the jury charge.

2.  Was the error in jury charge regarding the definition of "intentional" effectively cured merely because the application paragraph quoted the relevant statutory language?

# Reasons for Granting Review

The Court should grant discretionary review in this appeal because the Waco Court of Appeals: (1) has issued a decision that conflicts with numerous other court of appeals' decisions, including its own; (2) has left undecided an important question of state law that have not been, but should be, settled by this Court; (3) has decided important questions of state law in a way that conflicts with the applicable decisions of this Court; (4) has misconstrued article 36.19 of the Code of Criminal Procedure; and (5) has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3.

# Argument

**1. The Waco Court erred by failing to follow its "first duty" and address Appellant's claim of error in the jury charge.**

For nearly three decades, this Court has made clear that an appellate court's "first duty" in evaluating an appellate complaint of charge error is to determine whether the charge was erroneous. Texas appellate courts (including the Waco Court) have regularly recited this principle. However, when the Waco Court considered Appellant's claim of error in the charge, it skipped its "first duty" and proceeded straight to the issue of harm. For the reasons set forth, this Court should remand for the Waco Court to properly address the issue presented.

**A. An Appellate Court's "First Duty" Is to Address the Merits of a Jury Charge Complaint.**

Since this Court's seminal decision in *Almanza*, the Court has made clear that an appellate court's first responsibility in evaluating a claim of error in the jury charge is to determine whether there is error in the charge as claimed.

"Our **first duty** in analyzing a jury-charge issue is to decide whether error exists. If we find error, a harm analysis must then be done." *Phillips v.*

*State*, 463 S.W.3d 59, 64-65 (Tex. Crim. App. 2014) (emphasis added). The Court has so held on numerous occasions. *See, e.g., Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The first iteration of this settled principle appeared in the Court's decision in *Arline* where the Court undertook to restate the standard of review established by *Almanza*.

> In *Almanza*, this Court held that Article 36.19, V.A.C.C.P. (1974), prescribes the manner in which jury charge error is reviewed on appeal. Instead of automatically reversing convictions for technical charging errors, an appellate court must undertake a two-step process of review. **First, an appellate court must determine whether error exists in the charge.** Second, the appellate court must determine whether sufficient harm was caused by the error to require reversal of the conviction.

*Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (emphasis added) (citations omitted).

Texas intermediate appellate courts have virtually all cited this principle. *See, e.g., McGee v. State*, 2015 WL 3799362, at *3 (Tex. App.—Eastland June 11, 2015, no pet.); *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Vanover v. State*, 2014 WL 4351416, at *1 (Tex. App.—Texarkana Sept. 3, 2014, pet. ref'd); *Lee v. State*,

442 S.W.3d 569, 576-77 (Tex. App.—San Antonio 2014, no pet.); *Ragan v. State*, 2013 WL 6797734, at *3 (Tex. App.—Tyler Dec. 20, 2013, no pet.); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Gonzalez Soto v. State*, 267 S.W.3d 327, 334 (Tex. App.—Corpus Christi 2008, no pet.); *Deener v. State*, 214 S.W.3d 522, 528 (Tex. App.—Dallas 2006, pet. ref'd); *Garza v. State*, 2006 WL 668386, at *1 (Tex. App.—Beaumont Mar. 15, 2006, pet. ref'd); *Michaelwicz v. State*, 186 S.W.3d 601, 622 (Tex. App.—Austin 2006, pet. ref'd).

The Waco Court has cited this principle in more decisions than the word limits would allow citation to. In fact, Appellant's research has disclosed at least seven decisions of the Waco Court handed down in 2015 that subscribe to this principle.[2] Unfortunately, as demonstrated in

---

[2]    *See Smith v. State*, 2015 WL 6777600 (Tex. App.—Waco Nov. 5, 2015, pet. filed); *Anderson v. State*, 2015 WL 6584041 (Tex. App.—Waco Oct. 29, 2015, pet. filed); *Burns v. State*, 2015 WL 5092061 (Tex. App.—Waco Aug. 27, 2015, pet. ref'd); *Alaniz v. State*, 2015 WL 4710289 (Tex. App.—Waco Aug. 6, 2015, pet.); *Steele v. State*, 2015 WL 1877039 (Tex. App.—Waco Apr. 23, 2015, pet. filed); *Garcia v. State*, 2015 WL 1020876 (Tex. App.—Waco Mar. 5, 2015, pet. ref'd); *Grizzle v. State*, 2015 WL 222349 (Tex. App.—Waco Jan. 15, 2015, pet. ref'd).

Appellant's case, the Waco Court (and others) pay only lip service to this principle.

**B.    Jurisprudential Reasons Dictate That the Error Claim Be Addressed.**

An appellate court should first address whether error exists in the charge as alleged because: (1) the litigants are entitled to a charge that accurately states the law and instructs the jury accordingly; (2) trial courts are required to submit a jury charge that properly tailors the definitions of the culpable mental states to the "conduct element(s)" of the offense alleged; and (3) trial courts need guidance from the appellate courts, especially when, as here, the issue is unsettled.

**1.    The Charge Must Accurately State the Law.**

Article 36.14 of the Code of Criminal Procedure requires a trial court to furnish "a written charge [to the jury] distinctly setting forth the law applicable to the case."  TEX. CODE CRIM. PROC. art. 36.14.

> The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the case. "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."

*Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1994)) (footnotes omitted).

"It is not the function of the charge merely to avoid misleading or confusing the jury; it is the function of the charge to lead and to prevent confusion." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)); *accord Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

For these reasons, "each statutory definition that affects the meaning of an element of the offense must be communicated to the jury" in the charge. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (quoting 43 GEORGE E. DIX. & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 43:5 (3d ed. 2011). Here, Appellant's complaint related to errors in the definitions submitted in the charge. A criminal defendant (and the State for that matter) is entitled to a jury charge that includes proper definitions—especially, when he calls such errors to the trial court's attention.

**2.    The Charge Must Tailor the Definitions of the Culpable Mental States to Correspond to the Applicable Conduct Elements.**

"A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Price*

*v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994)).

This error by the trial court was the basis of Appellant's complaint both before the trial court and in the court of appeals. Nevertheless, the Waco Court ignored the merits and fast forwarded straight to the question of harm. The court never stated clearly and unequivocally that the charge contained error. Thus, even in the so-called harm analysis, the Waco Court referred to "purported error" in the charge. Why was it so difficult for the Waco Court to address the complaint of charge error properly preserved in the trial court?

### 3. Texas Trial Courts Need Guidance on This Unsettled Issue.

Appellant has located only one case holding that terroristic threat is a conduct-oriented offense. *Gillette v. State*, 444 S.W.3d 713, 730 (Tex. App.— Corpus Christi 2014, no pet.). Apparently this was insufficient authority to convince the trial court or the Waco Court of Appeals. Without further guidance from appellate courts, Texas trial courts are left scratching their heads when called upon to (1) decide whether terroristic threat is a conduct-oriented offense and (2) determine how to properly charge the jury on the offense.

Therefore, for each of these reasons, the jurisprudential function of an appellate court dictates that the Waco Court should have directly addressed whether the charged contained error. Otherwise, these settled principles governing Texas criminal jury charges have little value or meaning if a court can simply disregard them if that court determines that a charge error is harmless without taking the time to perform its adjudicative function and determine whether the charge in fact contained error.

## C.    Summary.

The Waco Court erred by failing to observe its "first duty" and plainly address the issue of whether the charge was erroneous. An appellate court should consistently and faithfully follow this requirement because: (1) a jury charge is required to provide the jury (virtually always laypersons) with accurate definitions and instructions; (2) a jury charge must tailor the relevant culpable mental state(s) to the conduct element(s) of the offense charged; and (3) Texas trial courts need guidance to properly carry out their responsibilities with regard to the jury charge.

## D.    The Court Should Grant Review on This Issue.

The Court should grant review of this issue for most of the reasons listed in Rule 66.3.  *See* TEX. R. APP. P. 66.3.

The Waco Court's decision appears to conflict with the decisions of numerous intermediate appellate courts (and the Waco Court's own decisions) with regard to an appellate court's obligation to address whether a jury charge contains error, particularly when the issue was preserved at trial and properly briefed on appeal. *Id.* 66.3(a).

The Waco Court has left undecided an important question of state law that has not been, but should be, settled by this Court, namely whether terroristic threat is a conduct-oriented offense. *Id.* 66.3(b).

The Waco Court's decision conflicts with the applicable decisions of this Court regarding an appellate court's "first duty" to address a claim of error in the jury charge. *Id.* 66.3(c).

The Waco Court appears to have misconstrued article 36.19 of the Code of Criminal Procedure which governs judicial review of errors in the charge. *Id.* 66.3(d).

And finally, the Waco Court has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *Id.* 66.3(f).

For these reasons, this Court should grant this ground for discretionary review.

**2.      Was the error in jury charge regarding the definition of "intentional" effectively cured merely because the application paragraph quoted the relevant statutory language?**

After assuming (but not deciding) that the charge was erroneous, the Waco Court purported to apply the *Almanza* analysis for "some harm." The first part of this analysis requires the court to examine the charge as a whole. In doing so, the Court relied on cases effectively holding that errors in the abstract portion of the charge may be cured by a proper application paragraph. However, the cases cited do not apply because the application paragraph did not undertake to define how the culpable mental state of intent applied to the offense charged. Therefore, this factor should have been considered to weigh in favor of a finding of "some harm."

**A.      The Application Paragraph Did Not Fix the Problem.**

The Waco Court focused on a line of cases that have found a charge adequate when the definitions in the abstract portion of the charge included superfluous information. *See, e.g., Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996).

This line of cases makes logical sense when the charge provides surplus definitions unnecessary to the charge but nevertheless contains

accurate information necessary for the jury to understand the law applicable to the case. But this line of cases does not and should not apply when the trial court fails to properly instruct the jury regarding the relevant culpable mental state(s).

Otherwise, a trial court may as well: (1) supply the jury the unabridged definitions of the relevant terms; (2) quote the relevant statutory language as modified by the indictment in the application paragraph; and (3) let the jurors sort out the proper meaning of the terms for themselves. However, to embrace this approach to jury charges is to abdicate the responsibility of the trial judge to properly instruct the jury.

This Court's own words bear repeating.

> The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the case. "Because the charge is the instrument by which the jury convicts, **[it] must contain an accurate statement of the law** and must set out all the essential elements of the offense."

*Vasquez*, 389 S.W.3d at 366 (emphasis added) (quoting *Dinkins*, 894 S.W.2d at 339).

## B.    Terroristic Threat Requires a Properly Focused Definition.

In the case of a simple result-oriented offense (like assault), focused and narrowly-tailored definitions regarding the culpable mental states are

arguably less important because the elements of the offense are so straightforward. However, terroristic threat is different.

Here, the trial court defined intent both with regard to the nature of the defendant's conduct and the result of his conduct. The statutory definition for the offense of terroristic threat would be unclear to a layperson regarding which definition actually applies. The statute proscribes a person acting with intent "to place any person in fear of imminent serious bodily injury." TEX. PEN CODE § 22.07(a)(2).

The Corpus Christi Court has explained that the intent requirement focuses on the nature of the actor's conduct, not the result. *Gillette*, 444 S.W.3d at 730. However, a layperson could readily read the statutory language and conclude that the intent requirement of the terroristic threat statute focuses on the result (*i.e.*, another being placed in fear). By contrast, for example, simple assault plainly focuses on the result of the actor's conduct. *See* TEX. PEN. CODE § 22.01(a)(1) (a person commits assault if he "intentionally, knowingly or recklessly causes bodily injury to another").

Therefore, it is imperative that the trial court properly tailor the definition of intent to the nature of the actor's conduct in a terroristic threat case. *See Price*, 457 S.W.3d at 441.

## C.  Appellant Had to Show Only "Some Harm."

Because Appellant properly preserved his complaint, he had to show only "some harm" for reversal. This is a much lower threshold for harm than the egregious harm showing required for unpreserved charge errors.[3] Nevertheless, the record must demonatrate that the defendant "suffered 'some' actual, rather than theoretical, harm from the error." *Arline*, 721 S.W.2d at 351.

As explained above, due to the confusing nature of the statutory definition for the offense as it pertains to whether the intent requirement applies to the nature or result of the actor's conduct, Appellant suggests that the erroneous definition by itself constitutes a substantial factor toward a showing of "some harm." No other part of the charge did anything to ameliorate the definitions of intent submitted in the charge.

For these reasons, Appellant contends that he suffered some harm as a result of the error in the charge.

---

[3]  Curiously, the Waco Court cited an egregious harm case at the commencement of its harm analysis. *See Smith*, 2015 WL 6777600, at *6 (citing *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008)).

**D. The Court Should Grant Review on This Issue.**

The Court should grant review of this issue for at least two of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The Waco Court's decision conflicts with the applicable decisions of this Court regarding the proper harm analysis for charge error. *Id.* 66.3(c).

The Waco Court appears to have misconstrued article 36.19 of the Code of Criminal Procedure which governs judicial review of errors in the charge. *Id.* 66.3(d).

For both reasons, this Court should grant this ground for discretionary review.

# Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant Sammy Lee Smith, Jr. asks the Court to: (1) grant review on the issues presented in this petition for discretionary review; and (2) grant such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Alan Bennett*
E. Alan Bennett
SBOT #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone:        (254) 772-8022
Fax:        (254) 772-9297
Email:        abennett@slmpc.com

# Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 3,942 words.

*/s/ Alan Bennett*
E. Alan Bennett

# Certificate of Service

The undersigned hereby certifies that a true and correct copy of this brief was served electronically on December 7, 2015 to: (1) counsel for the State, Sterling Harmon, sterling.harmon@co.mclennan.tx.us; and (2) the State Prosecuting Attorney, lisa.mcminn@SPA.texas.gov.

*/s/ Alan Bennett*
E. Alan Bennett

# Appendix

Opinion of Waco Court of Appeals:

*Smith v. State*, No. 10-14-00268-CR, 2015 WL 6777600 (Tex. App.— Waco Nov. 5, 2015, pet. filed)



IN THE
TENTH COURT OF APPEALS

No. 10-14-00268-CR

SAMMY LEE SMITH, JR.,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the County Court at Law No. 2
McLennan County, Texas
Trial Court No. 2014-0616-CR2

MEMORANDUM  OPINION

In three issues, appellant, Sammy Lee Smith Jr., challenges his conviction for

making a terroristic threat.  *See* TEX. PENAL CODE ANN. § 22.07 (West 2011).  Specifically,

appellant asserts that:  (1) the trial court erroneously defined the term "intentionally" in

the jury charge; (2) the State engaged in purposeful discrimination in its exercise of a

peremptory challenge against a juror; and (3) the evidence supporting his conviction is insufficient. Because we overrule all of appellant's issues on appeal, we affirm.[1]

<h2 style="text-align:center">I. APPELLANT'S *BATSON* CHALLENGE</h2>

In his second issue, appellant argues that the trial court's ruling on his *Batson* challenge was clearly erroneous because the record demonstrates that the State's race-neutral explanation for exercising a peremptory strike on Juror Number 2 is inaccurate and insufficient. *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 69 (1986).

## A. Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race." 476 U.S. at 89, 106 S. Ct. at 1719. A *Batson* challenge to a peremptory strike consists of three steps: (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts that are necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

**B.     Discussion**

At trial, appellant, an African-American, informed the trial court that the State had struck the only two African-American jurors in the strike zone. *See Godine v. State*, 874 S.W.2d 197, 203 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (stating that the defendant made a prima facie showing of a *Batson* violation by showing that the juror whom the State peremptorily struck was an African-American, like the defendant). However, on appeal, appellant only complains about the trial court's ruling on his *Batson*

challenge as to Juror Number 2. Nevertheless, appellant made a prima facie showing that the prosecutor's strike may have been racially motivated. *See id.*

In response to appellant's challenge, the State offered the following race-neutral reason for striking Juror Number 2:

> Judge, I think it's our obligation to give you, my understanding, race-neutral reasons as to why we struck these two individuals.
>
> With respect to Juror No. 2, I have a note that during [defense counsel's] voir dire, he was sleeping. So I am concerned he would not be able to pay attention and fully focus on the trial.

Defense counsel argued: "With respect to Reverend Watson [Juror Number 2], I do not recall that he slept at all during the voir dire. He was very alert and involved in the process, and I disagree with their characterization." The prosecution then asserted:

> Both Ms. Avery and I have independent notations that he was sleeping. I also have an initial notation, and I think it's from Ms. Avery's voir dire, where he couldn't imagine a situation—it had to do with beyond a reasonable doubt and whether or not he would be—he could imagine a situation where he knew something 100 percent. It was early on in Ms. Avery's voir dire. Again, after some cajoling and questioning, he was, I think, able to come around that he would understand that in that situation he would be a witness so he would be called to testify and not be called to judge.
>
> Generally speaking, it's my concern, with him being a pastor, that he's going to be more of a sympathetic person, more likely to give somebody a second chance. I think that his occupation plays a huge role into whether or not he could be [a] fair and impartial juror in this case.

Defense counsel responded that "those are not valid bases, and we reurge our objection." Thereafter, the trial court overruled appellant's *Batson* challenge.

Based on the foregoing, we do not believe that appellant refuted the prosecution's explanation or demonstrated that the State's explanation was merely a pretext for

discrimination. *See Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009); *Ford*, 1 S.W.3d at 693. With respect to the prosecution's assertion that Juror Number 2 was sleeping during voir dire, we must give great deference to the trial court's resolution of this dispute because it was in the best position to evaluate the credibility and demeanor of Juror Number 2, as well as the prosecutors and defense counsel. *See Leadon v. State*, 332 S.W.3d 600, 611 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Appellate courts must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. . . . We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes." (citations omitted)); *see also Grant*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010); *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). Without more, appellant's disagreement with the State's observation about Juror Number 2 sleeping is not enough to demonstrate that the State's explanation was merely a pretext for discrimination. *See Grant*, 325 S.W.3d at 657; *see also Watkins*, 245 S.W.3d at 448.

Furthermore, several Texas courts have held that a prospective juror sleeping during voir dire is a sufficient race-neutral reason for the exercise of a peremptory strike. *See Tiede v. State*, 104 S.W.3d 552, 559-60 (Tex. App.—Tyler 2000), *vacated on other grounds*, 76 S.W.3d 13 (Tex. Crim. App. 2002); *Lamons v. State*, 938 S.W.2d 774, 778 (Tex. App.—Houston [14th Dist.] pet. ref'd) (holding that a prospective juror's sleeping during portions of voir dire was alone sufficient to justify a peremptory challenge); *Irvine v. State*, 857 S.W.2d 920, 926 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex. App.—Dallas 1990, pet. ref'd) ("In the instant case, the State struck

juror 16 after it observed her dozing off and the court corroborated the State's observation. This was a sufficient racially neutrally [sic] explanation."). Additionally, the occupation of a venire member may serve as a race-neutral reason for the use of a peremptory strike. *See Leadon*, 332 S.W.3d at 613 (noting that a strike based on a person's occupation is race-neutral) (citing *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that striking a postal worker on the basis of occupation was race-neutral)); *see also Godine*, 874 S.W.2d at 205 ("Also, the occupation of a venireperson is a legitimate race-neutral reason for striking a perspective [sic] juror." (citing *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987); *Barnes v. State*, 855 S.W.2d 173, 174 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd))).

Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge as to Juror Number 2, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum v. State*, No. 10-13-00281-CR, 2014 Tex. App. LEXIS 10194, at *4 (Tex. App.—Waco Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's second issue.

## II.    EVIDENTIARY SUFFICIENCY

In his third issue, appellant argues that the evidence supporting his conviction is insufficient.

## A.     Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or

none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

## B. Discussion

A person commits the offense of terroristic threat if he threatens to commit an offense involving violence to any person or property with intent to place that person in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07(a)(2). In *Walker v. State*, the Fort Worth Court of Appeals stated:

> "Therefore, in order to commit this offense [terroristic threat], the accused must have the specific intent to place any person in fear of imminent serious bodily injury. . . . Intent can be inferred from the acts, words, and conduct of the accused. However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be complete it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury. Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. All that is necessary to complete the offense is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury."

327 S.W.3d 790, 794 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Dues v. State*, 634 S.W.2d 304, 305-06 (Tex. Crim. App. 1982) (internal citations omitted)).

Darrell Allen, the chief of police for Marlin, Texas, worked security for Club Crush, an after-hours club in Waco, Texas, on the night in question. Chief Allen observed appellant and another individual arguing with Randy Gober, the owner of the club. Chief Allen testified that he told appellant and the other individual that they had to leave or go inside the club. At this point, Chief Allen recalled that appellant told him to: "Get your bitch-ass out of here. You're no real cop, Nigger." Chief Allen noted that appellant "kept on in that type of language towards me" and that appellant was "very disrespectful, very insolent, wouldn't cooperate." Chief Allen told appellant to leave approximately twelve times, but appellant refused and got angrier.

According to Chief Allen, appellant then "stated that he was going to find me on Facebook and fuck me up. That he stated that he was a security guard and he had—he was going to put his gun in my face" after being told to leave for the twelfth time. Upon hearing a police siren, Chief Allen told appellant to get inside his car. Once inside, appellant "still uttered remarks saying he was going to find me, going to fuck me up." Chief Allen also testified that he observed appellant make furtive gestures while inside the car, "like he was looking for something" and that appellant's passenger kept saying he is from the hood and "Nigger, what's up?"[2] Chief Allen noted that he believed appellant was looking for a gun while inside the car and that an act of violence causing serious bodily injury was imminent. At this time, Chief Allen drew his service weapon, told appellant to get out of the car, and informed appellant that he was under arrest. At

---

[2] A subsequent search of appellant's vehicle found no firearms.

trial, Chief Allen could not recall appellant saying anything about "double-dipping," but he did correctly remember that appellant was driving a Sebring on the night in question.

Sergeant Jason Lundquist of the Waco Police Department arrived at the scene to see Chief Allen with his service weapon drawn. Sergeant Lundquist detained appellant and checked him for weapons. No weapons were found, and appellant told Sergeant Lundquist that "he didn't think that they were police officers because they were just working security for the club and they couldn't do that." After speaking with appellant, Sergeant Lunquist turned appellant over to Officer Lyle Smith of the Waco Police Department. Appellant told Officer Smith that he was told to leave but merely asked why.

Brandon Stanford, appellant's cousin, testified that appellant never threatened to pull a gun on Chief Allen and that he never threatened to look him up on Facebook. Additionally, Trecienda Moore, appellant's girlfriend, stated that she was in the car behind appellant and that she only heard him say the word "dip." Moore thought appellant was saying something about "flipping and dipping." Moore denied hearing appellant threaten Chief Allen. Appellant also testified on his own behalf, wherein he denied making any threat to Chief Allen and stating that he was a security guard.

As noted earlier, it is within the province of the jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of those conflicts. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision

regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). In convicting appellant of the charged offense, the jury clearly believed Chief Allen's version of the events and did not believe appellant or his witnesses regarding what transpired that evening; as such, we must defer to the jury's resolution of the conflict in the evidence.[3] *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have concluded that the State proved beyond a reasonable doubt that appellant committed the offense of making a terroristic threat by threatening violence with intent to place Chief Allen in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07; *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We therefore hold that the evidence is sufficient to support appellant's conviction. *See* TEX. PENAL CODE ANN. § 22.07; *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we overrule appellant's third issue.

---

[3] Appellant also appears to argue that the evidence supporting his conviction is insufficient because Chief Allen could not remember some of the details of the incident, and because Chief Allen's employment history (i.e., the fact that Chief Allen moonlighted as a security guard at Club Crush to earn more money) supported the defensive theory that he overreacted when appellant made a disrespectful and sarcastic remark about Chief Allen "double-dipping." Appellant's argument essentially attacks the credibility of Chief Allen. Once again, we note that it is within the province of the jury to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Furthermore, we are to defer to the jury's resolution of conflicts in the evidence. *See id.*; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd). As such, we are not persuaded by appellant's sufficiency argument.

### III.    THE JURY CHARGE

In his first issue, appellant asserts that the trial court erroneously included an untailored definition of "intentionally" in the jury charge. Specifically, appellant contends that making a terroristic threat is a conduct-oriented offense and that the definition of the term "intentionally" in the jury charge should be tailored to focus on the nature of his conduct, rather than the result of his conduct.

#### A.    Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

#### B.    Discussion

Here, the abstract portion of the jury charge pertaining to making a terroristic threat provided the following definition for "intentionally": "A person acts intentionally,

or with intent, with respect to the nature of his conduct or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Appellant argues that this definition did not properly tailor the definition of "intentionally" to focus on the nature of his conduct, rather than the result of his conduct.

Under *Almanza*, the level of harm necessary for reversal depends on whether the defendant timely and specifically objected to the jury charge. *See Almanza*, 686 S.W.2d at 171. Because appellant properly objected in the trial court to the definition of "intentionally" included in the jury charge, reversal is required if there was just "some harm." *Id.*

To determine harm, we weigh the following factors: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Even though the "some harm" standard is a low threshold, it nonetheless requires the reviewing court to find actual harm, rather than just theoretical harm. *Id.* Neither party bears the burden on appeal to prove harm or harmlessness. *Id.* at 462.

### 1. The Jury Charge as a Whole

The application portion of the jury charge pertaining to making a terroristic threat provided:

> Now, if you find from the evidence beyond a reasonable doubt that on or about June 16, 2013, in McLennan County, Texas, the Defendant, SAMMY LEE SMITH, JR., then and there threatened to commit an offense involving violence to a person, namely aggravated assault with a deadly weapon, with intent to place Darrell Allen in fear of imminent serious bodily injury, as charged in the Information, you will find the Defendant "Guilty." Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt

thereof, you will acquit the Defendant and say by your verdict "Not Guilty."

The language contained in the application portion of the jury charge pertaining to making a terroristic threat substantially tracks the language of section 22.07(a)(2) of the Penal Code, which is the operative statute in this case., and effectively restricts the jury's deliberations to the allegations in the indictment. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) ("A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury . . . ."); *Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (holding that the inclusion of merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability to implement fairly and accurately the commands of the application paragraph or paragraphs); *Grady v. State*, 614 S.W.2d 830, 831 (Tex. Crim. App. 1981) ("[T]his Court held that abstract statements of the law that go beyond the allegations in the indictment will not present reversible error when the court's application of the law to the facts effectively restricts the jury's deliberations to the allegations in the indictment."(citing *Toler v. State*, 546 S.W.2d 290, 293-94 (Tex. Crim. App. 1977))); *see also Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on a statutory issue."). Accordingly, we cannot say that this factor weighs in favor of finding "some harm." *See Warner*, 245 S.W.3d at 461. We now turn to the other factors to determine whether the purported error might have prejudiced the jury's consideration of the evidence or

substantially affected their deliberations. *See Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

### 2. Closing Arguments

Appellant's main defensive theory was that he did not make a terroristic threat at all. In fact, he did not contest the element of mental culpability at trial, though that is the basis of his complaint in this issue. "Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'" *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) (citing *Adams v. State*, 744 S.W.2d 622, 628-29 (Tex. App.—Fort Worth 1987, pet. ref'd); *Mena v. State*, 749 S.W.2d 639, 642 (Tex. App.—San Antonio 1988, pet. ref'd)); *see Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd). We therefore conclude that this factor does not weigh in favor of finding "some harm." *See Warner*, 245 S.W.3d at 461.

### 3. The Entirety of the Evidence

As detailed earlier, the record contains ample evidence indicating that appellant made a terroristic threat to Chief Allen. Moreover, we have concluded that the evidence supporting appellant's conviction is sufficient. As such, we cannot say that this factor weighs in favor of finding "some harm." *See id.*

### 4. Other Relevant Factors Present in the Record

Other than repeating arguments made under the aforementioned factors of this analysis, appellant does not direct us to any other compelling or relevant factors present

in the record. Once again, we cannot say that this factor weighs in favor of finding "some harm." *See id.*

### 5. Summary

Based on the foregoing, we conclude that any error in defining the term "intentionally" in the jury charge was harmless. *See Almanza*, 686 S.W.2d at 171. We overrule appellant's first issue.

### IV. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed November 5, 2015
Do not publish
[CR25]

